[Civ. No. 4407.   Third Appellate District.—October 23, 1931.]

P. W. COGER, Respondent, v. MARY J. WILTSEY, Appellant.

J. Oscar Goldstein for Appellant.

McCoy & Wetter for Respondent.

TUTTLE, J., *pro tem.*—This action was brought to recover damages arising out of a breach of an agreement to sell real property. The trial was had before a jury, and a verdict was rendered against appellant in the sum of $9,000. The verdict also contained a finding in favor of defendant J. H. Wiltsey. This appeal is taken from the judgment entered upon the verdict, and is prosecuted by defendant and appellant, Mary J. Wiltsey. Counsel for appellant did not represent her at the trial.

On June 25, 1928, appellant was the owner of certain real property near Red Bluff, California, consisting of some ten acres of land, with a dwelling-house thereon. Upon the date mentioned she and her husband, J. H. Wiltsey, entered into a written agreement with respondent, by the terms of which the Wiltseys leased to respondent the real property

mentioned for a period of five years, at an annual rental of $360 per year. The following portions of said agreement are pertinent to the issues in this case:

" It is further agreed that the party of the second part shall have the right or option to purchase the said above described real and personal property at any time during the term hereof, for the sum of $7,000.00, payable in lawful money of the United States, and in the event that second party shall exercise said option, it is hereby agreed that all moneys theretofore paid first parties as rent for said above described premises and property shall be applied on the purchase price of said property.

. . . . . . . . . . . .

"It is further agreed that the parties of the first part will forthwith execute a good and sufficient deed conveying all of the said above described real and personal property to the party of the second part, said deed to be placed in escrow at the Bank of Tehama County in Red Bluff, California, to be delivered to the said party of the second part on payment to first parties, their heirs or assigns, of the amount of the purchase price aforesaid."

Respondent took immediate possession of said property, and has been in possession thereof ever since.

The deed mentioned in the agreement was not deposited in escrow until March 20, 1930, although respondent had several times requested appellant to complete the escrow.

On March 11, 1930, respondent and one L. M. Coates entered into the following agreement:

"Red Bluff, California.
"March 11, 1930.

"Bank of Tehama County,
"Red Bluff, California.

"Gentlemen:

"We herewith deposit $400 with you upon the following conditions:

"P. W. Coger is to deliver to you a deed for the Gas Station property at the corner of the East Side and Susanville Highways signed by the proper parties in favor of L. M. Coates by three o'clock this afternoon at which time the balance of the purchase price of $17,500 is to be paid and time for examination of title is arranged for.

"Should Coger fail to produce said deed by said time then said deposit is to be returned to the said Coates.

"Should Coates fail to make the balance of the payments provided above then the $400 is to be paid to said Coger.

"P. W. COGER
"L. M. COATES"

Coates was a total stranger to respondent and had arrived in Red Bluff on the day before the above writing was signed.

Upon signing the foregoing agreement, Coates and respondent requested Bank of Tehama County to produce the deed mentioned in the agreement of June 25th. The bank replied that the deed had never been deposited with them. Thereupon respondent attempted to locate appellant. He could not find her in Red Bluff, nor could he find her address. Coates left for San Francisco, and the next day wrote respondent: "If you are able to close the deal within seven days from this date [March 13th] my offer will still hold good." On March 18th, respondent learned the address of appellant in San Jose, and wrote her that he had a deal on for the ten acres; that he had found she had not deposited the deed, and stating that it was imperative that this be done without delay. On March 20th, the attorney for appellant wrote respondent that the deed had been deposited that day. This letter was not received by respondent until March 21st. On March 23d, Coates wrote respondent from San Francisco, stating that he was no longer interested in the deal.

The complaint alleges the execution of the agreement between the parties hereto, and the failure, refusal and neglect of appellant to deposit the deed in the Bank of Tehama County. It also recites the transaction between Coates and respondent. Damages are claimed and predicated upon the following allegation: "That solely by reason of said neglect, failure, and refusal of said defendants to execute the deed and place the same in escrow as provided by said contract and as a direct and proximate result thereof, plaintiff was unable to convey a good title to said land to said L. M. Coates, and thereby lost the opportunity to sell said property to said Coates or any one else at said sum of $17,500.00, or any other profitable sum, and thereby plaintiff was damaged in the sum of $11,220.00."

The court, upon its own motion, gave the following instruction:

"You are instructed that if you believe from a preponderance of the evidence that the defendants, Mary J. Wiltsey, and J. H. Wiltsey, agreed to execute a good and sufficient deed conveying all of the real property described in that certain contract dated June 25, 1928, made between said Mary J. Wiltsey and J. H. Wiltsey, as parties of the first part and P. W. Coger, the plaintiff, as party of the second part, and to place such a deed in escrow at the Bank of Tehama County, in Red Bluff, California, and that the defendants failed to do so within a reasonable time after the signing of the contract and that such failure to place such deed in escrow at said bank resulted in a detriment to the plaintiff, then the plaintiff is entitled to recover from the defendants such an amount of money as will compensate the plaintiff for all the detriment proximately caused by such failure.

"Provided that you also find and believe that the attention of Mary J. Wiltsey and J. H. Wiltsey had been called to the intention and purpose of P. W. Coger to make resale of the property as is in others of these instructions mentioned."

In his opening statement to the jury, counsel for respondent said: "Mr. Coger lost the sale of that property, which was to him, as we will show, at an advantageous figure, and that he consequently lost the profit from the sale. We will try to show that that profit amounted to the sum of eleven thousand dollars."

A motion for nonsuit was made at the conclusion of plaintiff's case, and denied.

After an examination of the entire record we are convinced that the case was tried under a total misapprehension and misconception of the measure of damages applicable to an action of this character, and that the trial court erred in denying the motion for nonsuit and also in giving the foregoing instruction.

■ Under the agreement between these parties, appellant agreed to convey her real property to respondent. She also agreed to deposit the deed to her property, forthwith, in the bank. It is an admitted fact that she failed to thus deposit her deed, and thereby breached her agreement. This state of facts brings the case directly within the purview of section 3306 of the Civil Code, which reads as follows: "The detriment caused by the breach of an agreement to convey an

estate in real property, is deemed to be the price paid and the expenses properly incurred in examining the title and preparing the necessary papers, with interest thereon but adding thereto, in case of bad faith, the difference between the price agreed to be paid and the value of the estate agreed to be conveyed, at the time of the breach, and the expenses properly incurred in preparing to enter upon the land.''

There is no claim made in the case for the price paid or the expenses incurred in examining the title and preparing the necessary papers. From the complaint, statement of counsel for respondent at the trial, and the instructions given, it conclusively appears that the only damage sought is that arising out of the alleged loss of profit upon a resale to Coates. There is no authority in this state for such a recovery. By the plain and express provisions of the code section cited, *the measure of damages is the difference between the price agreed to be paid and the value of the estate agreed to be conveyed, at the time of the breach*. This view is upheld in *Haight* v. *Marin Municipal Water District*, 208 Cal. 753 [284 Pac. 926], *Kaufman* v. *Bell*, 89 Cal. App. 610 [265 Pac. 317], *Wilson* v. *White*, 161 Cal. 453 [119 Pac. 895], and numerous other California cases.

The position of respondent is that ''Section 3306 of the Civil Code, referred to by counsel, refers only to breach of agreement to convey estate in real property. This is an agreement to make an escrow.'' We must confess that we are unable to follow counsel in his view. The provision for an escrow was one of the terms of the agreement to convey, and a breach thereof was a breach of the agreement, and the sole and exclusive remedy therefor is found in the code section referred to.

From the record before us, it plainly appears that the court adopted the view of the law upon this question, as expounded by counsel for respondent at the trial. The jury was instructed, as we have shown, in the language of section 3300 of the Civil Code. Such an instruction was not justified by the pleadings or the evidence in the case. If this rule were adopted, it would open the door to fraud and collusion. One would merely have to plead and prove a contract with a third party, and he thereupon would be entitled to judgment for the difference between the original contract price and the contract price with the third party.

This would be done, as attempted here under the guise of special damages. This would open up a realm of speculation for the jury. It was probably for this reason that the legislature confined the damages to the difference between the price agreed upon in the contract and the value of the land at the time of the breach. We are not holding here that market value may not be proved by evidence of another contract with a subsequent vendee. That question is not before us. We do hold, however, that where a vendor has breached his contract to convey real property, the vendee cannot recover damages predicated (in the pleadings, proof and instructions), solely upon profits which he might have made on a resale of said property to a third party.

In order for the respondent to prevail, it was incumbent upon him to allege and prove facts showing bad faith upon the part of appellant. (See cases cited, *supra*.) *An examination of the record discloses that the question of bad faith was never presented to the jury.*

If we accept the theory of respondent, the judgment must nevertheless fall for the reason that there is no evidence in the record that appellant had any knowledge of the intent of respondent to ever make a resale of the property. In the instruction quoted *supra*, the jury were told that respondent could not recover unless such knowledge was brought home to appellant. The implied finding of the jury in favor of respondent, upon this issue, is without support in the record. The jury were also instructed that if they found that Coates was not able or willing to buy the property they must find for defendants. The testimony of Coates as to his ability to pay $17,500 is not sufficient to sustain an implied finding that he had the ability to pay that sum. He did not have the money with him at the time of performance. In one breath he said he could write a check, while in another he stated he had some of the money, $8,000, in a safe deposit box. He said he did not think his check would be paid at once. He said it would be paid "in good time". Witness Bottaro for respondent testified that Coates told him he was going to buy some property, and that he (Bottaro) agreed to loan Coates $10,000 on a first mortgage to complete the deal. This is clearly an insufficient showing upon the ability of Coates to pay $17,500 cash upon production of the deed. Upon the question as to the showing of ability

upon the part of a customer in an action concerning the commission of a real estate broker, the rule is laid down in 4 California Jurisprudence, 592, as follows:

"If the money for the purchase or sale is to be produced by some third person other than the customer, the broker has not produced a customer able to buy, and is not entitled to commissions."

Unenforceable promises do not constitute ability, as the latter term is applied to a prospective purchaser (*Merzoian* v. *Kludjian*, 183 Cal. 422 [191 Pac. 673].) ■ A proposed purchaser cannot be said to be able to purchase when he is dependent upon third parties, who are in no way bound to furnish the funds with which to make the purchase. (*Pellaton* v. *Brunski*, 69 Cal. App. 301 [231 Pac. 583].)

Under such circumstances, where a cause was pleaded and tried and the jury instructed upon a theory (relative to damages) not authorized by law, it is the plain duty of this court to prevent a miscarriage of justice by sending the case back for retrial.

It is therefore ordered that the judgment be reversed.

Plummer, J., and Preston, P. J., concurred.