[No. A026756. First Dist.. Div. One. Apr. 22. 1986.]

DONALD STOUT et al., Plaintiffs and Respondents, v.
JAMES A. EDMONDS, JR., as Real Estate Commissioner, etc.,
Defendant and Appellant.

**COUNSEL**

John K. Van de Kamp, Attorney General, and Julian O. Standen, Deputy Attorney General, for Defendant and Appellant.

William B. Peavy, Jr., Matthew N. White, Robinson & Peavy and Peavy & White for Plaintiffs and Respondents.

## OPINION

**RACANELLI, P. J.**—This appeal by the Real Estate Commissioner (Commissioner) from a judgment in favor of plaintiffs and respondents directing payment of $20,000 out of the Real Estate Education, Research and Recovery Fund (Bus. & Prof. Code, § 10470 et seq.)[1] raises the single issue whether the offending real estate broker "performed acts for which a license is required" within the meaning of section 10471. We will conclude and explain that the licensee's actions do not fulfill the statutory requirement for indemnity from the Real Estate Fund.

### FACTS

The facts are essentially uncontroverted:

In 1981 plaintiffs employed Adams & Burke, a San Francisco real estate agency, to sell a parcel of real property owned by them. Greg Salas, a real estate salesman for the agency, received an offer to purchase the property from Dorothy Singleton, a licensed real estate broker. Under the terms of the Singleton offer accepted by plaintiffs, the agreed purchase price of $130,000 was to be paid by Singleton's assumption of the existing first trust deed of $26,612, secondary financing in the amount of $40,000 secured by a second trust deed, with the remaining balance of $63,200 payable by promissory note to plaintiffs secured by a third trust deed. Thus, Singleton acquired ownership through a fully leveraged purchase agreement involving no cash consideration. In addition, Singleton received a $15,000 credit for repair work and a 2 percent "commission" of $2,600 enabling her to withdraw about $15,000 in cash upon the close of escrow.

Thereafter, Singleton received the property rents and made the first two installment payments on the three trust deeds. She then made no further payments on the secured loans and "walked away" from the property resulting in foreclosure proceedings and eventual restoration of title to plaintiffs. Plaintiffs sued Singleton for damages on grounds of fraud and ultimately obtained a default judgment for $51,790.90 plus $100.000 in punitive damages.

---

[1]All further statutory references are to this code as it read at the time of the judgment. We note that sections 10470 to 10483 have been repealed and replaced. operative January 1, 1987. (Stats. 1985, ch. 690, § 2.)

Thereafter, plaintiffs submitted an application to the court below for an order directing payment from the statutory recovery account. At the evidentiary hearing, Salas testified that he relied on Singleton's status as a licensed real estate broker in advising plaintiffs to proceed with the unusual financing arrangements. Although Salas (and plaintiffs) believed the transaction was "risky" due to the "zero equity" position, Salas assured plaintiffs "[Singleton] would do nothing to jeopardize her license . . . ." Further, Salas testified that Adams & Burke, as plaintiffs' sales agent, received only half of the agreed 4 percent commission, the remaining 2 percent being paid to Singleton "because she had a license." The trial court determined that plaintiffs qualified for recovery and ordered payment of the maximum allowable amount of $20,000.

## DISCUSSION

■ Section 10470 et seq. creates a special fund from license fees to compensate members of the public who are defrauded by real estate licensees. The statute provides for recovery from the fund of unpaid judgments against a licensee for actual or constructive fraud and conversion of trust funds "arising directly out of any transaction when the judgment debtor was licensed and performed acts for which a license is required." (§ 10471, subd. (a); *Froid* v. *Fox* (1982) 132 Cal.App.3d 832, 836 [183 Cal.Rptr. 461].)

The right to recover from the fund is statutorily created, and a plaintiff seeking recovery has the burden of showing compliance with the statute. (*Robinson* v. *Murphy* (1979) 96 Cal.App.3d 763, 766-767 [158 Cal.Rptr. 246].) Although the remedial statute must be liberally construed (*Nordahl* v. *Department of Real Estate* (1975) 48 Cal.App.3d 657, 663 [121 Cal.Rptr. 794]), courts may not disregard the explicit provisions of section 10471 which authorize recovery from the fund only if the judgment debtor performed acts for which a real estate license is required. (*McGaughey* v. *Fox* (1979) 94 Cal.App.3d 645, 651 [156 Cal.Rptr. 593].)

The Commissioner argues the trial court erred in awarding recovery to plaintiffs because Singleton's conduct did not require a license. We agree.

■ Section 10131 defines a real estate broker as "a person who, for a compensation or in expectation of a compensation, does or negotiates to do [certain acts] *for another* or others." (Italics added.) Consequently, two requirements must be met for a finding that a person is acting as a broker:

"1) the person is acting for compensation; and 2) the person is acting on behalf of someone else." (*Froid* v. *Fox, supra,* 132 Cal.App.3d 832, 839.)

Thus, it is well established that a person does not act as a broker and does not require a license when he deals with his own property. (*Merrifield* v. *Edmonds* (1983) 146 Cal.App.3d 336, 342-343 [194 Cal.Rptr. 104] [licensed salesman obtained loan and signed promissory note]; *Froid* v. *Fox, supra,* 132 Cal.App.3d 832 [broker created partnership with himself as a general partner and sold limited partnership interests to investors]; *Robinson* v. *Murphy, supra,* 96 Cal.App.3d 763, 768 [broker sold his own home]; *McGaughey* v. *Fox, supra,* 94 Cal.App.3d 645, 651 [broker sold limited partnership interests].) Indeed, section 10133 expressly exempts from the definition of real estate broker "[a]nyone who directly performs [the specified acts] with reference to his own property."

■ Our review of the record fails to disclose substantial evidence to establish that Singleton was acting as a broker during the underlying transaction. The only evidence adduced strongly suggests that Singleton was acting solely in her own behalf: she signed the purchase and loan documents in her own name; she paid the first two loan payments and collected the first three rent checks. There is simply no indication that Singleton acted on behalf of another person.[2] To the contrary, the record unmistakably evidences that she acted as a principal in her own behalf throughout the purchase and sales transaction; and performance of such acts did not require her to be licensed.

Plaintiffs' reliance on Singleton's receipt of part of the stipulated commission is in no wise determinative. To act as a licensed broker the person must perform acts *for another* "for a compensation or in expectation of a compensation . . . ." (§ 10131.) Since Singleton did not engage in the underlying transaction for the benefit of plaintiffs, receipt of the $2,600 payment could not have been "compensation." Rather, the sharing of the commission was most likely structured to effect a reduction in the sale price by crediting Singleton with $2,600 against the purchase price. (See *Merrifield* v. *Edmonds, supra,* 146 Cal.App.3d 336, 342 [payments designated as advances on commissions were personal loans]; *Robinson* v. *Murphy, supra,* 96 Cal.App.3d 763, 769-770 [commission purportedly paid to broker for sale of own house constituted part of seller's profit].)

---

[2]On this crucial point, *Gray* v. *Fox* (1984) 151 Cal.App.3d 482 [198 Cal.Rptr. 720], is factually distinguishable. There, the real estate licensee purchased the property in his own name and immediately sold it at a profit to an arranged buyer. The court found the licensee had acted as a broker: "[I]t was never his intent to hold title to the property. [The licensee] was in effect acting as a broker for the [sellers] and the [buyers]." (*Id.,* at p. 488.)

The order or judgment below is reversed.

Newsom, J., and Holmdahl, J., concurred.

Respondents' petition for review by the Supreme Court was denied July 9, 1986.