29 Cal.Rptr.3d 717 (2005)
130 Cal.App.4th 197
Thomas A. HORNING, Plaintiff and Appellant,
v.
Harold SHILBERG, Defendant and Respondent.
No. D043933.
Court of Appeal, Fourth District, Division One.
June 14, 2005.
*720 Fitzmaurice & Demergian and David K. Demergian, San Diego, for Plaintiff and Appellant.
Littler Mendelson and John S. Adler, San Diego, for Defendant and Respondent.
IRION, J.
Plaintiff Thomas A. Horning appeals a judgment awarding attorney fees and costs under Civil Code section 1717 to defendant Harold Shilberg as the prevailing party on Horning's claim for breach of contract to convey real property. Horning contends the trial court was not authorized to modify its orally announced tentative decision. Horning further contends he should have been awarded as damages: (1) a commission of $21,450; (2) resale profits of $205,000; and (3) $43,833 to cover the tax consequences of Shilberg's breach. Finally, Horning asserts the court abused its discretion in denying him leave to reopen the evidence to prove a previously unclaimed item of damage and in awarding attorney fees to Shilberg. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND
On December 3, 2001, Shilberg entered into a written agreement to sell Horning a multi-unit property at 634-640 Seacoast Drive, Imperial Beach, California, for $715,000. In the standardized, preprinted California Association of Realtors form contract (Contract) prepared by Horning, Shilberg agreed to pay Horning, a licensed real estate broker representing himself, a commission, designated as "compensation for services," of 3 percent of the purchase price upon the close of escrow.[1]
Paragraph 2(K) of the Contract provided that Horning had 21 days after acceptance to provide Shilberg with a loan prequalification letter. The prequalification letter was due on December 24, 2001. The Contract further provided: "If Buyer fails to provide such letter within that time, Seller may cancel this Agreement in writing within 5 Days After the time to provide the letter expires." Shilberg canceled the Contract on January 2, 2002, based on Horning's failure to provide Shilberg a prequalification letter within 21 days after acceptance of the Contract.
Horning sued Shilberg for specific performance or, in the alternative, damages for Shilberg's breach of the Contract to sell the Seacoast Drive property to him. Horning later recorded a lis pendens on *721 the property. Shilberg successfully moved to expunge the lis pendens. In February or March 2003, Shilberg sold the Seacoast Drive property to another party for $920,000.
In a bench trial, Horning sought the following damages: $21,450 as the commission Shilberg agreed to pay him in the Contract; $205,000 as the difference between the 2003 sales price and the 2001 Contract price of the Seacoast Drive property; and $43,833 as taxes he was required to pay when he was unable to complete a Starker exchange due to Shilberg's breach.[2]
Before closing argument, counsel for Horning requested permission to submit a legal brief on Horning's alleged Starker exchange tax damages. Horning's counsel told the court that if he determined there was no law to support his position, he would advise the court of that fact. Horning's counsel later advised the court that he would not be submitting any brief on the Starker exchange issue because "in light of the applicable regulations and decisions, [Horning] is unable to further advance that position."
The court announced its oral decision on October 10, 2003. The court found Shilberg breached the Contract by canceling it in an untimely fashion and Horning suffered damages in the amount of $21,500 for the lost commission promised in the Contract. The court then directed Horning to prepare the judgment.
Before a proposed judgment was lodged with the court, Shilberg filed a notice of hearing and notice of objections to any decision, order or judgment awarding Horning a broker's commission and attorney fees and/or costs. Shilberg then filed an ex parte application for an order that the court stay the signing of any judgment pending a noticed hearing on Shilberg's objections to the court's oral findings. At the ex parte hearing, Horning's attorney advised the court that he also intended to file objections to the court's proposed rulings. The court then set a hearing on the motions and ordered that judgment would not be entered until after that hearing. Horning filed a motion objecting to any decision failing to award plaintiff his consequential damages. Both parties filed motions for attorney fees and costs.
After hearing, the court ruled that its previous oral findings of October 10, 2003, were tentative and could be modified under California Rules of Court,[3] rule 232(a), (e) and (f), because no judgment had been entered. The court then found that although Shilberg breached the Contract, Horning suffered no damages because a broker acting as a principal in a transaction is not entitled to recover a commission as a matter of law. Because Horning suffered no damages, the court found Shilberg was the prevailing party and was entitled to attorney fees and costs. The court awarded Shilberg $80,373 in attorney fees and $5,558.72 as costs.
Horning then orally moved to reopen the trial to present evidence that he incurred expenses totaling $625 for an inspection and preliminary title report for the Seacoast Drive property. The court found this request untimely and denied it.
Shilberg was instructed to prepare the judgment. No statement of decision was requested by either party and judgment in *722 favor of Shilberg was signed and filed by the court on February 18, 2004.

STANDARD OF REVIEW
Where no statement of decision is requested by the parties, we assume the trial court made whatever findings were necessary to support the judgment. (Whittington v. McKinney (1991) 234 Cal. App.3d 123, 129, 285 Cal.Rptr. 586.) We must indulge all presumptions in favor of the judgment. (Tusher v. Gabrielsen (1998) 68 Cal.App.4th 131, 140, 80 Cal. Rptr.2d 126.) We review questions of law and interpretations of a contract de novo. (Postal Instant Press, Inc. v. Sealy (1996) 43 Cal.App.4th 1704, 1708, 51 Cal.Rptr.2d 365.)

DISCUSSION

I

Trial Court Had Authority to Modify Its October 10, 2003 Oral Decision
Horning contends the trial court was without authority to modify its judgment announced on October 10, 2003, because there was no valid procedural predicate on which to base the modification. Specifically, Horning contends the October 10, 2003 oral decision was "not tentative by any definition" and that Shilberg's objections to any judgment awarding him a broker's commission was not a procedurally proper mechanism by which to challenge the court's legal conclusions in its October 10, 2003 decision. We conclude the court's orally announced October 10, 2003 decision was tentative and properly subject to change.
Rule 232(a) provides that after the trial of a question of fact by the court lasting more than one day, the court "shall announce its tentative decision by an oral statement, entered in the minutes, or by a written statement filed with the clerk." That is exactly what happened in this case. After the four-day trial concluded, the court had the parties return to court so it could give its oral ruling.
Rule 232(a) specifically states that the "tentative decision shall not constitute a judgment and shall not be binding on the court." Instead, a court "may enter a wholly different judgment than that announced" in its statement of intended decision. (Canal-Randolph Anaheim, Inc. v. Wilkoski (1978) 78 Cal.App.3d 477, 494, 78 Cal.App.3d 477.) Until entry of judgment, the court may vacate or change a previously-rendered verdict as it sees fit. (Code Civ. Proc., ß 664; Phillips v. Phillips (1953) 41 Cal.2d 869, 874, 264 P.2d 926.) As no judgment had been entered in this case before January 30, 2004, the court could properly change its October 10, 2003 tentative decision. (Canal-Randolph Anaheim, Inc., supra, 78 Cal.App.3d 477, 494, 144 Cal.Rptr. 474; In re Marriage of Hafferkamp (1998) 61 Cal.App.4th 789, 794, 71 Cal.Rptr.2d 761.)[4]

II

Trial Court Properly Refused to Award Horning Damages for a Lost Commission
Horning contends the court erred by failing to award him consequential damages for Shilberg's breach of the Contract. *723 Horning asserts that as a broker, he was entitled to recover damages of $21,450 in the form of a lost commission as specified in the Contract. Alternatively, he asserts he was entitled to these damages as the difference between the purchase price ($715,000) and the price he agreed to pay after his commission was taken into account ($693,550).

A
A real estate broker is a person "who, for a compensation or in expectation of a compensation, regardless of the form or time of payment, does or negotiates to do [certain specified] acts for another or others." (Bus. & Prof.Code, ß 10131; see also Nguyen v. Scott (1988) 206 Cal.App.3d 725, 732, 253 Cal.Rptr. 800.) Thus, a person acts as a broker only if he or she is acting (1) for compensation and (2) on behalf of someone else. (Stout v. Edmonds (1986) 180 Cal.App.3d 66, 69-70, 225 Cal.Rptr. 345; Froid v. Fox (1982) 132 Cal.App.3d 832, 836, 183 Cal.Rptr. 461.) Conversely, a person acting on his or her own behalf in a real estate transaction is not a broker within the meaning of Business and Professions Code section 10131.
In the typical real estate purchase transaction, a licensed broker enters into a written agreement (brokerage contract) with a principal for compensation. (R.J. Kuhl Corp. v. Sullivan (1993) 13 Cal. App.4th 1589, 1599, 17 Cal.Rptr.2d 425.) By executing a brokerage contract, the principal employs the broker as his or her agent to perform certain real estate services, thus implicating both agency and contract law. (Ibid.) The parties to a brokerage contract may agree to any amount or manner of compensation on any lawful conditions. (Ibid.; John B. Kilroy Co. v. Douglas Furniture of Cal., Inc. (1993) 21 Cal.App.4th 26, 35, 25 Cal.Rptr.2d 752.) Compensation may be in the form of a "commission," defined as "a fee paid to an agent or employee for transacting a piece of business or performing a service." (Webster's 3d New Internat. Dict. (3d ed.1961) p. 457.) Thus, in the context of a real estate transaction, a broker's commission is predicated on an agency or employment relationship with a third party.
Where a broker agrees to purchase property on his or her own behalf, there is no agency or employment relationship with a third party and therefore no entitlement to a commission or other compensation. (See Stout v. Edmonds, supra, 180 Cal.App.3d 66, 70, 225 Cal.Rptr. 345; Robinson v. Murphy (1979) 96 Cal.App.3d 763, 768, 158 Cal.Rptr. 246.) "Although a broker is involved, this role is subsumed within the superseding characterization of the person as a principal to the transaction: his ancillary status as a broker is not sufficient to alter the fundamentally bilateral nature of such a sale." (Robinson v. Murphy, supra, 96 Cal.App.3d 763, 767-768, 158 Cal.Rptr. 246.) Any agreement to pay a purported "commission" or other compensation to a broker purchasing property on his or her own behalf is, in essence, an agreement to a reduction in the purchase price. (Stout v. Edmonds, supra, 180 Cal.App.3d 66, 70, 225 Cal.Rptr. 345 [because broker who purchased property on his own behalf did not engage in transaction "for another," payment of $2,600 was not compensation, but rather reduction in purchase price]; Robinson v. Murphy, supra, 96 Cal.App.3d 763, 769-770, 158 Cal.Rptr. 246 [where licensed real estate agent sold property and paid himself 6 percent commission, purported commission was part of his profit as seller]; Prichard v. Reitz (1986) 178 Cal.App.3d 465, 468, 223 Cal.Rptr. 734 [because no commission is due on the sale of one's own property, broker-seller who demands a commission in addition to negotiated sale *724 price "simply `chiseled' an extra compensation from the buyer"].)[5]

B
Here, the Contract under which Horning claims a commission is not a brokerage contract, but rather a residential income property purchase agreement between Horning as buyer and Shilberg as seller. That agreement expressly acknowledges Horning is a real estate licensee acting as a principal. The agreement also states in two separate paragraphs that real estate brokers are not parties to the agreement. Thus, contrary to Horning's argument, he was not "simply wearing two hats in the transaction (that of buyer and buyer's broker)." Because Horning was not a broker in the transaction (i.e., he did not perform services for another), he was not entitled to a real estate broker commission based on broker activities.
Horning asserts he was contractually entitled to a commission of 3 percent of the $715,000 sales price as stated in paragraph 42 of the Contract. The Contract signed by Horning as buyer and Shilberg as seller, while acknowledging Horning is a principal and brokers are not parties to the transaction, nevertheless provides in paragraph 42 for "broker compensation from seller." (Capitalization omitted.) In paragraph 42A, Shilberg agreed, upon close of escrow, "to pay compensation for services" of 3 percent of the purchase price to "Thomas A. Horning, Realtor, Broker...."[6] Paragraph 42B provides: "(1) If escrow does not close, compensation in paragraph 42A is payable: (i) upon Seller's default if completion of sale is prevented by default of Seller...." However, as we previously discussed, Horning did not act as a broker by performing services for another for compensation he expected to receive as a broker. Because Horning, as principal, was not entitled to a real estate commission in the first instance, he cannot successfully claim a lost commission when escrow did not close. Further, by acknowledging Horning was a principal and no brokers were involved in the transaction, Shilberg could not have agreed to compensate a "broker" for broker activities. Rather, the parties agreed Horning was entitled to a 3 percent reduction in the purchase price via a rebate if escrow closed.
When Shilberg breached the Contract, Horning was entitled to damages for a seller's breach of an agreement to convey real property as specified in Civil Code section 3306.[7] Here, the measure of Horning's damages was the difference between the purchase price and the fair market value of the Seacoast Drive property on the date of breach (the market-contract *725 differential), plus consequential damages according to proof. (Civ.Code, ß 3306; Reese v. Wong (2001) 93 Cal.App.4th 51, 55-56, 112 Cal.Rptr.2d 669; Al-Husry v. Nilsen Farms Mini-Market, Inc. (1994) 25 Cal.App.4th 641, 651 & fn. 16, 31 Cal. Rptr.2d 28; Stevens Group Fund IV v. Sobrato Development Co. (1991) 1 Cal. App.4th 886, 892, 2 Cal.Rptr.2d 460.)
Under paragraph 42B of the Contract, Horning was entitled to have the reduced purchase price used when determining his damages under Civil Code section 3306. Thus, under Civil Code section 3306, Horning was entitled to the difference between $693,550 and the fair market value of the property on the date of breach. However, at trial, Horning presented no evidence of the value of the property on the date of breach. Thus, the market-contract differential component of Horning's damages was zero. (Al-Husry v. Nilsen Farms Mini-Market, Inc., supra, 25 Cal.App.4th 641, 651, fn. 16, 31 Cal.Rptr.2d 28; see also Nielsen v. Farrington (1990) 223 Cal. App.3d 1582, 1587, 273 Cal.Rptr. 312 [no evidence presented concerning value of property at time of breach].) Further, Horning presented no evidence to support a claim for consequential damages. This failure of proof supports the court's finding of no damages. (Sapp v. Barenfeld (1949) 34 Cal.2d 515, 524, 212 P.2d 233 ["Proof that a contract has been breached is not sufficient to entitle a party to damages for the breach without proof that damage has been suffered"].)

III

Trial Court Properly Denied Horning Damages for Lost Profits
Horning contends he was entitled to damages of $205,000 as lost resale profits based on the difference between the Contract price ($715,000) and the price Shilberg received ($920,000) when he later sold the Seacoast Drive property to another party. Horning asserts lost resale profits can be awarded as consequential damages under Civil Code section 3306.
In Reese v. Wong, supra, 93 Cal. App.4th 51, 61, 112 Cal.Rptr.2d 669, the court addressed and rejected this same argument, holding the unambiguous language of Civil Code section 3306 "does not authorize damages based on the value of property at the time of trial." The court explained that although the Legislature amended Civil Code section 3306 in 1983 to delete a requirement of bad faith for recovery of the difference between the agreed price to be paid and the value of the property at the time of breach, "it did not alter the statutory language specifying the measure of damages. The only reasonable presumption is that no change was intended." (Reese v. Wong, supra, 93 Cal. App.4th 51, 60, 112 Cal.Rptr.2d 669.) Further, the legislative history of Civil Code section 3306 provides no support for the argument that by expressly permitting the recovery of consequential damages, the Legislature intended to establish alternative measures of damages. (Reese v. Wong, supra, 93 Cal.App.4th 51, 60, 112 Cal.Rptr.2d 669.)
As we previously discussed, the measure of Horning's damages was the difference between the purchase price and the fair market value of the property on the date of breach. Thus, the court properly refused to award Horning his lost resale profits.[8]

*726 IV

Trial Court Properly Denied Horning Damages for the Failed Starker Exchange
Horning contends that because of Shilberg's breach, he was unable to complete a proposed Starker exchange and was required to pay $43,833 in capital gains taxes as a result. He claims he should have been awarded this amount as damages. We conclude Horning has conceded that his proposed Starker exchange was invalid and thus the trial court properly refused to award damages related to the proposed exchange.
Horning sold an investment property on Otay Valley Road in San Diego in October 2001. After the sale of this property, Horning had 45 days to designate properties to replace it. Under the relevant Internal Revenue Service regulations, Horning was permitted to designate three properties as replacements.
Shilberg presented expert testimony from two witnesses on Horning's proposed Starker exchange. Both witnesses provided uncontradicted testimony that Horning's proposed exchange was not a valid Starker exchange because Horning designated four parcels, not the maximum of three allowed under applicable Internal Revenue Service regulations.
Before the close of trial, the court noted that it had heard uncontradicted opinions from two expert witnesses that Horning's proposed Starker exchange was not valid. Horning's counsel sought permission to file a legal brief on the validity of the proposed Starker exchange based on the evidence that had been received during trial. Horning's counsel told the court, "[I]f I determine there is not going to be law to support the position, I will advise the court." Horning's counsel later advised the court that he would not be submitting any brief on the Starker exchange issue because "in light of the applicable regulations and decisions, [Horning] is unable to further advance that position." Given this concession, Horning's continued argument for damages related to his failed Starker exchange has no merit. (Saret-Cook v. Gilbert, Kelly, Crowley & Jennett (1999) 74 Cal.App.4th 1211, 1227, 88 Cal.Rptr.2d 732.)[9]

V

Trial Court Did Not Abuse Its Discretion in Denying Horning Leave to Reopen
After the trial court announced its decision to deny Horning damages and award Shilberg attorney fees as the prevailing party, Horning sought leave to reopen to present evidence that he incurred expenses totaling $625 for an inspection and preliminary title report related to the Seacoast Drive property. The court found this request untimely and denied it. Without citing any authority, Horning contends the court abused its discretion in denying *727 his request given the court's "surprise reversal of itself."
Trial courts have broad discretion in deciding whether to reopen the evidence. (Rosenfeld, Meyer & Susman v. Cohen (1987) 191 Cal.App.3d 1035, 1052 & fn. 7, 237 Cal.Rptr. 14.) We review a court's denial of a motion to reopen evidence for an abuse of discretion. (Ibid.) The appropriate test for abuse of discretion is whether the trial court's decision exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, we have no authority to substitute our decision for that of the trial court. (Walker v. Superior Court (1991) 53 Cal.3d 257, 272, 279 Cal.Rptr. 576, 807 P.2d 418.)
During trial, Horning presented evidence of damages in the following three areas only: the broker's commission, the Starker exchange and the lost profits. In response to a specific question from the court regarding any loss incurred for preparing title for sale, Horning's counsel replied that there were no such losses. Later, Horning's counsel specifically advised the trial court that Horning "tried to narrow the damages to ... the Starker Exchange, the difference in evaluation [sic], and the broker's commission." In Horning's appellate brief, he admitted that he elected "not to adduce any evidence of other minor and incidental expenses." Thus, Horning's failure to present evidence regarding damages for the $350 inspection report and $275 preliminary title report was a knowing and voluntary tactical decision. Given these facts, we cannot say the trial court abused its discretion in denying Horning's motion to reopen made nearly six months after the close of evidence. (See Rosenfeld, Meyer & Susman v. Cohen, supra, 191 Cal.App.3d 1035, 1052-1053, 237 Cal.Rptr. 14 [denial of motion to reopen not an abuse of discretion where failure to introduce evidence earlier was the product of trial tactics]; Broden v. Marin Humane Society (1999) 70 Cal. App.4th 1212, 1222, 83 Cal.Rptr.2d 235 [motion to reopen is subject to a diligence requirement].)

VI

Trial Court's Award of Attorney Fees Was Not an Abuse of Discretion
The trial court found that Shilberg was the prevailing party and awarded contractual attorney fees to Shilberg of $80,373 plus $5,558.72 as costs. The $80,373 constituted attorney fees for 321.5 hours of service at a rate of $250 per hour. Shilberg was billed for his attorney's services at the rate of $200 per hour. However, Shilberg was contractually obligated to pay an additional $50 per hour for all time expended, payable at the conclusion of the litigation, provided he was the prevailing party. Horning contends the trial court abused its discretion in awarding a "victory bonus" to Shilberg relative to attorney fees. Horning argues, without citation to authority, that the attorney fee award goes beyond the statutory purpose of making the prevailing party whole. Moreover, he contends the award is against public policy because it exceeds the actual indebtedness incurred by the client.
In reviewing an award of attorney fees, the amount awarded by the trial court will not be set aside absent an affirmative showing of abuse of discretion in that the award is "manifestly excessive in the circumstances." (Children's Hospital & Medical Center v. Bont· (2002) 97 Cal. App.4th 740, 782, 118 Cal.Rptr.2d 629.) Here, Horning has not shown the trial court's attorney fee award was an abuse of discretion. As no statement of decision was requested, we conclude the trial court made such implied findings as will support *728 the judgment. (Booth v. Robinson (1983) 147 Cal.App.3d 371, 377, 195 Cal.Rptr. 130.) We thus assume the trial court found the number of hours billed by Shilberg's attorney was reasonable and that Shilberg actually incurred attorney fees at $250 per hour. Thus, the court's attorney fee award was not an abuse of discretion.

DISPOSITION
The judgment is affirmed.
WE CONCUR: McINTYRE, Acting P.J., and O'ROURKE, J.
NOTES
[1] Shilberg was specifically advised in the Contract that Horning was a California real estate licensee acting as a principal.
[2] A Starker exchange is a tax deferred transaction under Internal Revenue Code section 1031 where a seller exchanges property held for productive use in a trade or business or investment for like-kind property within certain specified time periods. (26 U.S.C. ß 1031.)
[3] Rule references are to the California Rules of Court.
[4] Although the court was prompted to change its orally announced tentative decision by Shilberg's notice of objections to any decision, order or judgment awarding Horning (1) a broker's commission and (2) attorney fees and/or costs, we need not decide whether this motion was procedurally proper. As discussed above, the October 10, 2003 orally announced tentative decision was not binding on the court. (Rule 232(a).) Thus, the court could change its decision even without a motion from the parties.
[5] Although Stout, Robinson and Prichard involve recovery under the Real Estate Education, Research and Recovery Fund, now the Real Estate Recovery Program (Bus. & Prof. Code, ß 10470 et seq.), their discussions concerning entitlement to real estate commissions by persons not acting as brokers are relevant here.
[6] To the extent this provision creates an ambiguity, it must be construed against Horning. (Victoria v. Superior Court (1985) 40 Cal.3d 734, 738, 222 Cal.Rptr. 1, 710 P.2d 833 [ambiguities in contract language are to be resolved against the drafter]; Franklin v. Hansen (1963) 59 Cal.2d 570, 575, 30 Cal.Rptr. 530, 381 P.2d 386 [licensed real estate brokers are presumed to know laws relating to real estate transactions].)
[7] Civil Code section 3306 provides: "The detriment caused by the breach of an agreement to convey an estate in real property, is deemed to be the price paid, and the expenses properly incurred in examining the title and preparing the necessary papers, the difference between the price agreed to be paid and the value of the estate agreed to be conveyed at the time of the breach, the expenses properly incurred in preparing to enter upon the land, consequential damages according to proof, and interest."
[8] Other authority cited by Horning does not support his position. Indeed, Coger v. Wiltsey (1931) 117 Cal.App. 652, 4 P.2d 302 is directly contrary to Horning's position. In that case, the only damages sought by the plaintiff for the defendant's failure to convey real property were the alleged loss of profit upon a resale of the property. The court held, "There is no authority in this state for such a recovery. By the plain and express provisions of [Civil Code section 3306], the measure of damages is the difference between the price agreed to be paid and the value of the estate agreed to be conveyed, at the time of the breach." (Id. at p. 657, 4 P.2d 302.)
[9] Even had Horning not conceded that his proposed Starker exchange was invalid, the court did not err in refusing to award him damages from the failed Starker exchange. As discussed above, the undisputed expert witness testimony established that Horning's proposed Starker exchange was not valid because he had improperly designated replacement properties. Thus, even if Shilberg had not breached, Horning would have been required to pay capital gains taxes on the sale of the Otay Valley Road property.