Filed 9/25/14  White v. Taylor CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| LAWRENCE WHITE,<br><br>    Plaintiff and Respondent,<br><br><br>v.<br><br><br><br>JAYCEON TERRELL TAYLOR,<br><br>    Defendant and Appellant. | B252350<br><br><br>(Los Angeles County<br>Super. Ct. No. BC494604) |

        APPEAL from an order of the Superior Court of Los Angeles County, Amy Hogue, Judge.  Affirmed.

        Law Office of Lonnie J. Brandon and Lonnie J. Brandon for Defendant and Appellant.

        Law Office of Steven Soloway and Steven Soloway for Plaintiff and Respondent.

**INTRODUCTION**

Defendant Jayceon Terrell Taylor appeals an award of attorney fees following the granting of his second motion to set aside the entry of default. Taylor contends the trial court abused its discretion in awarding $19,125 in attorney fees to plaintiff Lawrence White, claiming it was unreasonable for the court to rely on White's attorney's declaration regarding the amount of time the attorney spent seeking the default and opposing Taylor's motions. We disagree and therefore affirm the trial court's award.

**FACTUAL AND PROCEDURAL HISTORY**

On October 25, 2012, White initiated the underlying action against Taylor and others, alleging claims for assault, battery, defamation, and other related causes of action stemming from an alleged physical altercation between the two hip-hop artists and the subsequent publication of a cellphone video of the fight. White filed a proof of service on November 2, 2012, showing service of the summons and complaint on Taylor by substituted service—first by leaving a copy of the papers at Taylor's residence with a person identified as "Ice," and then by mailing a copy of the papers to the same address the following day.

A. *Taylor's First Motion for Relief*

After Taylor did not timely respond to the complaint, the trial court entered default against him on March 18, 2013. Taylor then moved to set aside the default pursuant to Code of Civil Procedure section 473.5[1] (the first motion), which provides relief when "service of a summons has not resulted in actual notice to a party in time to defend the action." Taylor submitted a declaration in support of his motion, stating that he was "out of town" at the time of service of the summons and complaint, that he did not know

---

[1]     Statutory references are to the Code of Civil Procedure.

anyone named "Ice," that no one by that name had ever lived in his home, and that he "never received the actual Summons and Complaint and thereby never received actual notice of the issues involved in this matter in time to defend it." Taylor further declared that he learned of the default from his entertainment attorney on March 20, 2013, and thereafter "immediately took action to defend this matter."

White submitted an opposition to Taylor's first motion, including a memorandum of points and authorities, a supporting declaration, and seven exhibits. The exhibits included multiple media interviews occurring prior to March 18, 2013 (the date of the entry of default) in which Taylor discussed the lawsuit. The accompanying declaration of John Liem, a law clerk assisting White's counsel, details Liem's efforts in finding and generating the exhibits. White argued, therefore, that Taylor was aware of the lawsuit and thus could not establish lack of actual notice prior to the entry of default. Prior to the hearing on the first motion, White filed an additional proof of service indicating that Taylor was personally served with the summons and complaint on February 16, 2013.

The trial court denied Taylor's first motion, finding that Taylor "failed to make a credible or persuasive showing" that his alleged lack of notice was not caused by his avoidance of service or inexcusable neglect.

### B.      Taylor's Second Motion for Relief

Taylor filed a second motion for relief from default (the second motion) on June 24, 2013, this time pursuant to section 473, subdivision (b). That section provides mandatory relief from default where an application is timely, is in proper form, and is "accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect" in causing the default. (§ 473, subd. (b).) Whenever relief is granted under this provision, the statute requires payment by the offending attorney of the "reasonable compensatory legal fees and costs to opposing counsel or parties." (*Ibid*.)

In his second motion, Taylor stated that, despite his prior sworn declaration claiming he became aware of the "'entry of default'" on March 20, 2013, he in fact was

3

aware of White's "'request for a default judgment'" as of March 5, 2013. Indeed, Taylor admitted he was aware of the lawsuit even prior to that date but "failed to respond when he thought the lawsuit was merely about an assault and battery with no injuries." However, once he learned that White had requested a default judgment of $2.5 million, he "took immediately [*sic*] action before the default was entered." Taylor contended he retained his attorney, Lonnie Brandon, prior to the entry of default on March 18, 2013. Brandon, in an accompanying declaration, attested that he was retained in this matter on or about March 5, 2013, but failed to file a timely response to the complaint on Taylor's behalf because he was "understaffed and busy with other cases" and also incorrectly assumed that default had already been entered.

White opposed Taylor's second motion, arguing that the motion should be denied due to the contradictions between the first and second motions and because of Taylor's failure to attach a copy of his proposed answer to his motion.[2] White further requested attorney fees pursuant to section 473, subdivision (b). In addition to the opposing memorandum of points and authorities, White submitted evidentiary objections to Brandon's declaration.

In an order filed August 1, 2013, the trial court found that Taylor was entitled to relief under section 473, subdivision (b), based on Brandon's affidavit of fault. The court continued the matter to September 6, 2013, and ordered Taylor to submit a proposed responsive pleading prior to the hearing. The court also ordered White's counsel to submit "admissible evidence (a Declaration with a breakdown of fees and costs) attributable to the entry of default and opposition to Defendant Taylor's motions" in support of White's fee request.

## C.    *Award of Attorney Fees*

White's attorney, Steven Soloway, submitted a declaration in support of his request for fees on August 30, 2013. Soloway's declaration set forth his educational and

---

[2]    Taylor had attached a proposed answer to his first motion.

4

legal background and his hourly rate of $425.00. Soloway's declaration also included descriptions of the services he performed that he claimed were compensable as related to the default and motions, as well as a chart breaking down these services by hours and by hourly rate. In total, Soloway requested reimbursement for 45 hours of work at a cost of $19,125.00.

Taylor opposed White's fee request, claiming that the amount requested was "outrageous" and unsupported and asking the court to reduce the amount or strike the request entirely.

The trial court heard argument on the fee award at a hearing on September 6, 2013. The court indicated that it had reviewed the declaration submitted by White's counsel and Taylor's opposition, as well as the "extensive papers filed" for Taylor's motions. The court noted that it was a "highly litigated matter," with two motions and oppositions, including "investigations that had to be done." The court found that Soloway's hourly rate of $425 was "not an unusually high rate" based on the court's experience and that the number of hours claimed was "not surprising given the nature of the matter." Stating that there was "a great deal of work done" to oppose Taylor's motions, the court made the express finding that the fees were reasonable. As a result, the court awarded the entire $19,125 in attorney fees White had requested.

## DISCUSSION

*A.      Standard of Review*

A trial court has broad discretion in determining the amount of reasonable attorney fees, and that amount "will not be set aside absent an affirmative showing of abuse of discretion in that the award is 'manifestly excessive in the circumstances.'" (*Horning v. Shilberg* (2005) 130 Cal.App.4th 197, 210, quoting *Children's Hospital & Medical Center v. Bontá* (2002) 97 Cal.App.4th 740, 782.) "The 'experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court

5

is convinced that it is clearly wrong.' [Citations.]" (*Serrano v. Priest* (1977) 20 Cal.3d 25, 49.) Thus, an award will be reversed "only if that amount 'is so large or small that it shocks the conscience and suggests that passion and prejudice influenced the determination.'" (*Acree v. General Motors Acceptance Corp.* (2001) 92 Cal.App.4th 385, 404, quoting *Akins v. Enterprise Rent-A-Car Co.* (2000) 79 Cal.App.4th 1127, 1134.)

### B. Award of Fees

Taylor asserts the trial court abused its discretion by awarding White an unreasonable amount of attorney fees (i.e., $19,125).[3] Taylor largely repeats here the arguments he made in the trial court in opposing White's request for fees. We briefly address each argument and conclude the court did not abuse its discretion by finding that the fees requested by White were reasonable.

On appeal, Taylor focuses on four particular task entries in White's fee request that he claims are unreasonable—the request for entry of default (one hour), the oppositions to Taylor's first and second motions (12 and nine hours, respectively), and an "[a]pplication for order permitting entry of a separate judgment against Defendant Taylor" (eight hours) that was never filed. For the first three entries, Taylor argues that the amount of time Soloway claims to have spent on these tasks is unreasonable and that Soloway's declaration of his hours worked is therefore "inflated and extreme" and does not provide competent evidence of legitimate fees incurred.

A trial court's fee-setting inquiry ordinarily begins with the "lodestar" figure (i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate),

---

[3] Although Taylor has appealed the entire award, he does not appear to contend that the trial court erred in granting some fees pursuant to section 473, subdivision (b). Indeed, Taylor admits that White is entitled to "reasonable legal fees." Moreover, he does not challenge the trial court's findings that the statutory requirements were met, thus triggering the mandatory award of fees. (§ 473, subd. (b) [court "shall, whenever relief is granted based on an attorney's affidavit of fault, direct the attorney to pay reasonable compensatory legal fees"].)

which a trial court may adjust based on a case's specific circumstances and other factors. (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095-1096.) "The value of legal services performed in a case is a matter in which the trial court has its own expertise. [Citation.]" (*Melnyk v. Robledo* (1976) 64 Cal.App.3d 618, 623.) The court may also consider factors such as "the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case." (*Id*. at pp. 623-624.)

In his initial challenge to the court's lodestar reasoning, Taylor has failed to establish that the hours claimed by White's attorney were "manifestly excessive" under the circumstances of the case. The evidence demonstrates that the trial court based its award on a full examination of the record, including an assessment of the amount of work done, as well as on the attorney declaration provided. In particular, in ruling on the fee request during the hearing, the trial court expressly stated that it had reviewed the papers filed and considered the work done to oppose each of Taylor's motions. The court noted that it was a "highly litigated matter" and found there was "a great deal of work done to oppose the first motion" and the opposition to the second motion also required "another long bit of work."

Disregarding the trial court's consideration of the totality of these circumstances, Taylor focuses only on the length of some of the documents White prepared and his own estimate of how long each task should have taken. But his belief that certain tasks should have taken less time to complete does not provide an appropriate basis upon which to overturn the trial court's finding that the fees requested were reasonable. Under the circumstances, the court could reasonably have concluded that the number of hours White claimed reflected a legitimate request, given the nature of the proceedings. The trial court was personally aware of Soloway's work in the case and therefore had the best perspective from which to judge the reasonableness of the amount of attorney fees he requested. Notably, it was Taylor's own conduct in bringing two different (and arguably contradictory) motions for relief from default that increased the amount of the related fees.

7

Taylor also challenges the court's award of Soloway's rate—complaining that Soloway's fee entries improperly sought reimbursement at the attorney rate of $425 per hour for work that should have been (or was) performed by a law clerk "at a much lower and reasonable hourly rate of $25.00 per hour." Notably, Taylor does not challenge the rate of $425 per hour as a reasonable attorney hourly rate. Rather, he argues that work that was, or could have been, done by a law clerk should be reimbursed at a lower rate. For example, Taylor points to the factual research performed by John Liem, the law clerk, in opposition to the first motion, and contends that White is seeking recovery for such research at a rate of $425 an hour.

However, Taylor has provided no evidence to establish that the trial court awarded fees at an unreasonable rate. The trial court addressed this issue during the hearing, noting that it was considering the legal research performed in opposing Taylor's motions, rather than the factual research completed by the law clerk. As such, the court could reasonably have concluded that Soloway's estimate of 12 hours to prepare the opposition to the first motion, including "researching, drafting, and otherwise preparing Plaintiff's opposition," properly reflected the amount of time spent by Soloway on these services.

Next, with respect to the fourth challenged entry, Taylor contends that the request for attorney fees improperly included charges for preparation of an application "for an order permitting [entry of] a separate judgment" against Taylor. In his declaration, Soloway stated that he began to research and prepare this application following the denial of Taylor's first motion on June 6, 2013, but then abandoned it once Taylor filed his second motion on June 24, 2013. Taylor does not dispute that he gave no indication to White or White's counsel that the second motion was coming prior to actually filing it; rather, he argues that there is no support for White's claim because the application was never actually filed and would not be necessary to secure a default. However, "[c]ompensation should not be strictly limited to efforts that were demonstrably productive." (*Thayer v. Wells Fargo Bank* (2001) 92 Cal.App.4th 819, 839.) Rather, the appropriate number of hours to include in a fee award is all time "reasonably expended" in pursuit of the ultimate result achieved. (*Harman v. City and County of San Francisco*

8

(2006) 136 Cal.App.4th 1279, 1310.) White's counsel sought compensation for the time he claims following his successful opposition to Taylor's first motion in researching, planning, and drafting paperwork to pursue a default judgment against Taylor. The court could reasonably have concluded that this time was sufficiently related to the entry of default to be compensable, and was entitled to rely on Soloway's declaration as evidence to support that award.[4]

Taylor's claim that the trial court should not have relied on Soloway's declaration to determine its award is similarly unavailing. It is well settled that a trial court may rely on an attorney's declaration as adequate evidence supporting a request for fees. (*See Raining Data Corp. v. Barrenechea* (2009) 175 Cal.App.4th 1363, 1375 ["an award of attorney fees may be based on counsel's declarations, without production of detailed time records"].) Here, as the court had requested, Soloway's declaration provided a breakdown of services performed and the hours spent. Given the court's determination that the hours requested were reasonable and its familiarity with the work performed, the court was entirely within its discretion to rely on Soloway's declaration as adequate evidence to support the fee award.

Finally, Taylor suggests that the fee award here is against public policy because the size of the award makes it punitive rather than compensatory, representing a windfall for one attorney while discouraging offending attorneys from admitting a mistake. We disagree. The trial court found that the hours claimed by White's attorney were reasonable given the facts of the case and therefore awarded the requested fees as compensation for time spent, not punishment. Indeed, if the trial court had wanted to impose a penalty on Taylor or his counsel for their actions, it could have done so pursuant to section 473, subdivision (c)(1). Moreover, the trial court expressly rejected Taylor's counsel's suggestion during the hearing that the award might be punitive. And

---

[4] Taylor also contends that Soloway's declaration should be subject to "strict scrutiny" based on a purported admonition in an unrelated case 15 years ago. Taylor has failed to provide any legal authority in support of this argument and did not raise it below. Therefore we do not consider it.

Taylor's prediction of a chilling effect ignores the very purpose behind this provision—to avoid malpractice actions by allowing relief from default based on attorney mistake. Relief from default (and avoidance of a potential malpractice lawsuit) would presumably outweigh any concerns over a large fee award.

**DISPOSITION**

The order awarding attorney fees is affirmed.  White is awarded costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

COLLINS, J.

We concur:

EPSTEIN, P. J.

WILLHITE, J.

10