Filed 7/27/22  P. v. Marzetta CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MARKUS MARZETTA,<br><br>Defendant and Appellant. | C093766<br><br>(Super. Ct. Nos. 19FE018634, 20FE004246 ) |

At the beginning of the COVID-19 pandemic, defendant Markus Marzetta was arrested after stabbing a security guard during an altercation in front of a store.  Pursuant to the Governor's emergency orders, the Chief Justice, acting in her capacity as Chairperson of the Judicial Council of California (Judicial Council), issued an order extending the statutory time frame in which to hold a preliminary hearing for defendants held in custody pending trial.  Defendant moved to dismiss the complaint filed against him when his preliminary hearing was not held within the 10-day statutory deadline.  He argued the Chief Justice lacked authority to extend the deadline and the prosecution's

failure to hold a preliminary hearing within the time provided by the statute constituted a violation of his speedy trial right. The trial court denied the motion. Instead of filing a motion to dismiss the information in the trial court or petitioning for a writ of mandate in this court, defendant decided to proceed to trial. A jury ultimately found defendant guilty of assault with a deadly weapon and found true an allegation he inflicted serious bodily injury during the commission of the offense.

Defendant appeals, arguing his case must be dismissed because his preliminary hearing did not occur within 10 days of his arraignment. We disagree. Because defendant waited until after trial to seek review of the alleged speedy trial violation in holding his preliminary hearing, defendant must demonstrate prejudice, which he has failed to do. We also conclude defendant's contentions he acted in lawful self-defense during the commission of the crime and the prosecutor committed prejudicial prosecutorial error lack merit. Accordingly, we affirm the judgment of conviction.

We requested supplemental briefing regarding whether Senate Bill No. 567 (2021-2022 Reg. Sess.) retroactively applies to defendant and whether he is entitled to have his sentence vacated and remanded. After receiving briefing from the parties, we conclude remand is unnecessary.

## FACTUAL AND PROCEDURAL BACKGROUND

In the evening hours of March 2, 2020, defendant was inside a store and sought to talk to the in-store security guard about getting a job as a security guard at the store. Defendant banged on the door to the security room and Michael A., the in-store security guard, answered. Defendant asked Michael about applying for a job and claimed to be a perfect candidate for a security guard. To Michael, defendant appeared to be under the influence of drugs, so Michael referred defendant to an online application process before closing the security room door. Defendant responded by banging on the door one more time and yelling " '[f]uck you' " at Michael.

2

About 15 minutes later, Michael went outside of the store for his break. Once outside, he stood and talked with the two other security guards, Austin S. and Julio F. While the three men talked, they saw a woman leave the store with defendant following her. The woman looked uncomfortable, as if she did not want defendant to follow her. Michael told defendant repeatedly to leave the store's property. Defendant walked over to Michael and started yelling at him. Michael and defendant then began arguing with one another. Austin stepped between the men to deescalate the situation. He "polite[ly]" "nudge[d]" defendant away from Michael and told defendant to step away and leave the store's property.

Defendant responded by headbutting Austin. Austin then pushed defendant away from him, and defendant started "bouncing" around and lunging at Austin. Each time defendant lunged at Austin, Austin pushed defendant away. Defendant soon began walking away and Austin and Julio followed behind him to ensure he would leave the property. Michael followed behind Austin and Julio believing the purpose of following defendant was to detain defendant until police arrived. As defendant walked away, he yelled, " 'Follow me, follow me' " and " 'I got something for you. Come here. Come here. I got something for you.' " Defendant also reached into his pocket like he was trying to get something.

Once defendant got in front of the store, he turned toward Austin. Austin again told defendant to leave the property. Defendant refused, so Austin again pushed defendant to get him off the store's property. An unknown person watching the altercation told defendant to fight Austin. In response to the unknown person's suggestion, defendant said "okay" and discarded his grocery bag. Austin put on gloves anticipating a fight. While doing so, defendant walked to Austin and punched him twice.

Austin responded by crouching down and wrapping his arms around defendant's rib cage. He lifted defendant off his feet and took defendant to the ground. Austin then saw defendant had a knife and told Julio defendant was armed. In response, Julio

punched and kicked defendant multiple times while defendant was on the ground and while Austin was on top of defendant holding onto his hand that held the knife.

Around this time, Lamont S. saw the altercation and approached Michael complaining about the conduct of the other security guards. When Michael did nothing to break up the fight, Lamont attempted to break up the fight by removing the security guards, which allowed defendant to get out from under Austin. Michael then grabbed defendant and threw him to the side and defendant got away. During the altercation, two of defendant's dreadlocks were torn from his scalp and left on the ground.[1] Defendant also had "abrasions and/or lacerations" around his left eye, bruising on his eyelid, and a bloodied ear.

Once defendant was gone, Austin discovered he had been stabbed near his left rib cage and sliced on his arm. Austin also had three slice marks on his jacket around the stomach area. Austin was taken to the hospital, where it was discovered the knife had punctured his lung. The lung injury required surgery and Austin remained in the hospital for four days. Soon after the stabbing, defendant was arrested and a knife was found in his waistband.

On March 4, 2020, defendant was arraigned and remanded into custody. That same day, Governor Gavin Newsom issued Executive Order N-28-20 declaring California in a state of emergency as a result of the COVID-19 pandemic. On March 17, 2020, the Chief Justice of California, acting in her role as Chair of the Judicial Council, issued an order pursuant to Government Code section 68115 authorizing the presiding judge of Sacramento County Superior Court to extend preliminary hearing deadlines to 15 court days for cases where the normal 10-court-day deadline would have fallen between March 17, 2020, and April 16, 2020. Per that order, the presiding judge of

---

[1] The jury viewed surveillance footage of the events that took place in the parking lot and in front of the store.

4

Sacramento County Superior Court extended the deadline for preliminary hearings to 15 court days for cases where the normal 10-court-day deadline would have fallen between March 18, 2020, and April 16, 2020. On March 18, 2020, defendant was formally arraigned. On March 19, 2020, preliminary hearings were removed from the list of judicial proceedings allowed to take place in Sacramento County Superior Court.

On March 27, 2020, Governor Newsom issued Executive Order N-38-20 suspending the limitations articulated in Government Code section 68115. The next day, the Judicial Council held an emergency meeting and authorized the Chief Justice in her role as Chair of the Judicial Council to take necessary action to protect public health, including to extend the statutory deadline for preliminary hearings. On March 30, 2020, the Chief Justice, as Chair of the Judicial Council, issued a statewide order finding good cause to " '[a]uthorize superior courts to issue implementation orders that: Extend the time period provided in section 859b of the Penal Code[2] for the holding of a preliminary hearing examination and the defendant's right to release from 10 court days to no more than 30 court days.' " That same day, the presiding judge of the Sacramento County Superior Court issued an order providing all preliminary hearings would be conducted through interactive video technology and impliedly permitted preliminary hearings to again occur. On April 1, 2020, the presiding judge of the Sacramento County Superior Court issued an order pursuant to the Chief Justice's March 30, 2020, emergency order extending the time period provided in section 859b for the holding of a preliminary hearing from 10 court days to 30 court days.

On April 10, 2020, 16 days after defendant's formal arraignment, his preliminary hearing was held. Prior to the examination of witnesses through interactive video technology, defendant made a variety of motions related to pandemic-related procedures,

---

**2**      Further section references are to the Penal Code unless otherwise indicated.

5

including a motion to dismiss his complaint or release him from custody.  Defendant argued "the Governor does not have the authority to suspend the speedy preliminary hearing or speedy trial right statutes to allow the Judicial Council or the [Chief Justice of California] to change that law absent legislation."

The trial court disagreed, reasoning "the Chief Justice in this state does have the authority to issue emergency orders and extend deadlines for matters like criminal preliminary hearings.  Based on the current state of the virus epidemic, on March 30th of 2020 the Chief Justice issued a statewide order finding good cause to extend the provisions, the period provided in Penal Code section 859(b) [*sic*] to up to 30 days.  Following that[,] the presiding Judge of the Sacramento [County] Superior Court issued a similar order on April 1st."  Because defendant's preliminary hearing was being held within 30 days of his arraignment, the hearing was "within the lawful period as extended by both the Chief Justice and the presiding Judge of this Court."

Defendant was ultimately held to answer and an information was filed charging him with assault with a deadly weapon based on his stabbing of Austin and assault by means of force likely to cause great bodily injury based solely on defendant's headbutting of Austin.  It was further alleged defendant inflicted great bodily injury during the commission of the assault with a deadly weapon charge and that he had previously been convicted of a prior serious felony offense that also qualified as a strike offense.  Defendant did not move to dismiss the information pursuant to section 995 or seek a writ of mandate in this court.

Following a jury trial, defendant was found guilty of assault with a deadly weapon and the allegation he had inflicted great bodily injury during the commission of that offense was found true.  Defendant was found not guilty of assault by means of force likely to cause great bodily injury and a mistrial was declared as to the lesser included offense on that count.  In a bifurcated proceeding, the trial court found the allegation true

6

that defendant had previously been convicted of a serious felony that also qualified as a strike offense.

The trial court sentenced defendant to the upper term of four years for the assault with a deadly weapon conviction, doubled to eight years pursuant to the three strikes law. The court imposed three years for the great bodily injury enhancement attached to that count and an additional five years for the prior serious felony conviction enhancement for a total of 16 years in prison. Defendant was also sentenced on a violation of probation case, for which the court imposed a concurrent term of three years.

When sentencing defendant, the trial court cited multiple aggravating factors: 1) the crime "was very violent"; 2) "defendant has engaged in violent conduct indicating a serious danger to society"; 3) "defendant's prior convictions as an adult are numerous"; 4) "he has served a prior prison term"; 5) defendant was on formal probation and [postrelease community supervision]; and 6) "defendant's prior performance on probation and [postrelease community] supervision has been unsatisfactory." When justifying the upper term for the assault on a deadly weapon conviction, the trial court stated "[t]he upper term is chosen because of the fact the defendant has served a prior prison term, and his prior convictions as an adult are numerous . . . ."

Defendant appeals.

DISCUSSION

I

*Defendant Has Not Shown He Was Prejudiced By*

*The Delay In Holding His Preliminary Hearing*

Defendant contends he is entitled to reversal of his conviction and dismissal of the charges against him because his preliminary hearing was held six days after the deadline contained in section 859b, despite the fact the Chief Justice extended the time to hold a preliminary hearing by 30 court days. In his reply brief, defendant acknowledges that, because he waited until this direct appeal to challenge the alleged unlawful delay in

holding his preliminary hearing, he must show he was prejudiced by the delay. (See *People v. Clark* (2016) 63 Cal.4th 522, 552 ["nonjurisdictional irregularities in preliminary examination procedures do not require reversal unless the defendant establishes that he or she was deprived of a fair trial or otherwise suffered prejudice as a result. [Citation.] A denial of a defendant's right to trial within a prescribed statutory time period falls within this class of irregularities that are not jurisdictional in the fundamental sense and which, therefore, require a showing of prejudice"].)

Indeed, under the California Constitution, a defendant is not entitled to have judgment set aside absent a showing "that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.) Our Supreme Court has explained that "[a]lthough a defendant seeking pretrial relief for a speedy trial violation is not required to make an affirmative showing of prejudice [citation], the situation is different after judgment. [Citations.] 'Upon appellate review following conviction, . . . a defendant who seeks to predicate reversal of a conviction upon denial of his right to speedy trial must show that the delay caused prejudice: this court, in reviewing the judgment of conviction, must "weigh the effect of the delay in bringing defendant to trial or the fairness of the subsequent trial itself." ' " (*People v. Lomax* (2010) 49 Cal.4th 530, 557, quoting *People v. Johnson* (1980) 26 Cal.3d 557, 574.)

This was the point made by the California Supreme Court in *Clark* in the context of section 859b. (*People v. Clark*, *supra*, 63 Cal.4th at p. 552.) While here, in contrast with the defendant in *Clark*, defendant objected in the trial court and sought dismissal, although not pursuant to section 995, he did not pursue mandamus relief and the issue is before this court on appeal following conviction rather than on a pretrial writ. (*Clark*, at p. 552; see *People v. Wilson* (1963) 60 Cal.2d 139, 149 [proper remedy for enforcing speedy trial rights is petition for writ of mandate prior to trial].) For the same reason, defendant's reliance on *Bullock* is misplaced. (*Bullock v. Superior Court of Contra Costa County* (2020) 51 Cal.App.5th 134, 149-150 [dismissal was an appropriate remedy

8

despite the fact a preliminary hearing was held during the pendency of mandamus review because the defendant sought mandamus relief as opposed to waiting until after trial].) Thus, defendant must demonstrate he was prejudiced by his pretrial delay.

Defendant argues he was prejudiced by the delay in holding his preliminary hearing because his "trial was postponed for several months during the pandemic [citation], which imposed many further restrictions on [his] ability to assist his counsel in his defense, as well as putting him at a high risk of contracting Covid." (Fn. omitted.) With this argument, defendant does not argue with particularity how the fairness of his trial was hindered by the six-day delay. He also does not argue how the six-day delay, as opposed to the subsequent delay caused by the COVID-19 pandemic, led to a material delay in holding his trial. Because defendant has not shown he was prejudiced by the alleged speedy trial violation in holding his preliminary hearing, dismissal based on that alleged violation is unwarranted.

II

*Sufficient Evidence Demonstrated Defendant Acted With A Lack Of Self-Defense*

Defendant contends the evidence was insufficient to demonstrate he acted with a lack of self-defense, as was required for the jury to find him guilty of assault with a deadly weapon. We disagree.

" 'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence -- that is, evidence that is reasonable, credible, and of solid value -- from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] We determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.] In so doing, a reviewing court 'presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " (*People v.*

9

*Edwards* (2013) 57 Cal.4th 658, 715.) "Even when there is a significant amount of countervailing evidence, the testimony of a single witness that satisfies the standard is sufficient to uphold the finding." (*People v. Barnwell* (2007) 41 Cal.4th 1038, 1052.)

" 'To justify an act of self-defense . . . , the defendant must have an honest and reasonable belief that bodily injury is about to be inflicted on him. [Citation.]' [Citation.] The threat of bodily injury must be imminent [citation], and '. . . any right of self-defense is limited to the use of such force as is reasonable under the circumstances.' " (*People v. Minifie* (1996) 13 Cal.4th 1055, 1064-1065, italics omitted.) The defendant's belief in the need to act in self-defense must be objectively reasonable as determined from the point of view of a reasonable person. (*Id*. at p. 1065; *People v. Humphrey* (1996) 13 Cal.4th 1073, 1082-1083.) "It is well established that the ordinary self-defense doctrine -- applicable when a defendant reasonably believes that his safety is endangered -- may not be invoked by a defendant who, through his own wrongful conduct (e.g., the initiation of a physical assault or the commission of a felony), has created circumstances under which his adversary's attack or pursuit is legally justified." (*In re Christian S.* (1994) 7 Cal.4th 768, 773, fn. 1, italics omitted; *People v. Valencia* (2008) 43 Cal.4th 268, 288.)

Defendant argues he acted in lawful self-defense when he stabbed Austin because he was outnumbered during a fight, in which Austin was on top of him and Julio was punching and kicking him, and even stomping on his head, while Michael stood by. Under these circumstances, defendant argues, it was reasonable for him to resort to stabbing Austin to protect himself. Defendant relates the facts in the light most favorable to himself instead of in the light most favorable to the judgment. We neither reweigh the evidence nor reevaluate the credibility of witnesses. (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

Indeed, defendant ignores Austin's and Julio's testimony that they were ushering defendant off the store's property after defendant had already harassed a female store

10

patron and initiated a physical altercation with Austin. The second phase of the altercation did not occur because Austin and Julio attacked defendant, it occurred because defendant refused to leave the property, pulled out a knife, and ran toward Austin punching him twice. Austin took defendant to the ground and Julio kicked and punched defendant in response to defendant wielding a knife at Austin. Taking this testimony into account, as we must, it is clear the jury found defendant to be the aggressor and not Austin or Julio. As stated, it is well established the self-defense doctrine may not be invoked by a defendant who, through his own wrongful conduct, has created circumstances under which his adversary's attack is justified. (*In re Christian S.*, *supra*, 7 Cal.4th at p. 773, fn. 1.) Thus, there was evidence from which the jury could have concluded defendant stabbed Austin without justification. Accordingly, the evidence was sufficient to support the jury's determination defendant did not act in self-defense.

## III

### *The Prosecutor Did Not Commit Prejudicial Error*

Defendant contends the prosecutor committed prejudicial error by eliciting evidence pertaining to Lamont's prior act of spousal battery that had been excluded during motions in limine. We disagree.

### A

### *Background*

Before trial, defendant objected to the prosecutor's intended use of four of Lamont's prior convictions and the underlying conduct of those convictions as impeachment evidence. These convictions included a 2004 misdemeanor conviction for spousal battery, a 2006 felony conviction for corporal injury on a spouse, a 2007 misdemeanor conviction for corporal injury on a spouse, and 2015 felony conviction for assault with a deadly weapon. Defendant argued the convictions and their underlying conduct were inadmissible under Evidence Code section 352.

11

The trial court agreed the 2004 misdemeanor conviction for spousal battery and associated conduct was inadmissible under Evidence Code section 352 because the conviction was "just too remote." The trial court further prohibited the prosecutor from asking whether Lamont was convicted of a misdemeanor related to the 2007 corporal injury on a spouse, but permitted the prosecutor to ask Lamont whether he had inflicted a corporal injury on his spouse in 2007. In the event Lamont denied having inflicted a corporal injury in 2007, the prosecutor would be permitted to impeach Lamont with a certified record of the misdemeanor conviction.

During the prosecutor's cross-examination of Lamont, he testified to having a criminal record. In particular, he admitted to having been convicted of assault with a deadly weapon and, to his recollection, a single conviction of domestic violence when he was 18 years old. When asked whether he got in fights with women, Lamont answered "[n]o. Not fights. Arguments. I got in a few arguments." On redirect, Lamont also admitted to having been convicted of domestic violence in 2007, when he was 26 years old. Then, on recross, the prosecutor asked Lamont whether he had been convicted of felony domestic violence in 2006. He responded, "If that's what's on the record. I don't recall that. I suffered from a bad motor-vehicle accident in 2016, so I lost a lot of my memory then of my past. [¶] It comes to me, what my criminal history is. I am definitely not going to know everything about my criminal history from 16 years ago." The prosecutor then asked Lamont, "So then you also wouldn't remember committing spousal battery in 2004 then?" Lamont responded, "Yes. I'm starting to recall[] the incident now."

Defense counsel objected and asked to be heard outside the presence of the jury. The trial court overruled the objection. The prosecutor requested for Lamont's answer to be read back by the court reporter and the trial court denied the request. Lamont was then excused as a witness.

12

Following the close of evidence, defense counsel objected again to the prosecutor's questions pertaining to Lamont's 2004 commission of spousal battery. The trial court agreed the prosecutor violated the court's in limine order not to reference Lamont's 2004 spousal battery conviction. It stated, however, that if the prosecutor had asked to impeach Lamont's insinuation that he did not get in fights with women with his 2004 prior act of spousal battery, the request would have been granted. The problem, as the court saw it, was that the prosecutor went about it the wrong way. The trial court decided to leave the evidence as it was and not instruct the jury to disregard Lamont's 2004 prior act of spousal battery because the evidence was clearly impeachment evidence.

B

*The Prosecutor's Questions Constituted Admissible Impeachment Evidence*

Defendant does not take issue with the trial court's finding that the prosecutor's questions about Lamont's 2004 spousal battery, although elicited in an improper manner, were nonprejudicial because the resulting evidence would have been admissible impeachment evidence. Instead, defendant argues the evidence was inadmissible because the prosecutor's questions, which were elicited on recross-examination of Lamont, were outside the scope set by defense counsel's redirect examination.

Defendant did not object on this basis in the trial court. " 'It is well settled that making a timely and specific objection at trial . . . , is a necessary prerequisite to preserve a claim of prosecutorial misconduct for appeal.' " (*People v. Johnsen* (2021) 10 Cal.5th 1116, 1164.)

In any event, "[t]rial courts have broad discretion in deciding whether to reopen the evidence." (*Horning v. Shilberg* (2005) 130 Cal.App.4th 197, 208.) With the trial court's ruling that it would have permitted the prosecutor to impeach Lamont, it impliedly stated it would have allowed the prosecutor to reopen her cross-examination for that purpose. That decision was not an abuse of discretion. The prosecutor's questions

13

on recross regarding Lamont's 2004 prior act of spousal battery did not appear to be asked as the result of trial tactics. (See *Rosenfeld, Meyer & Susman v. Cohen* (1987) 191 Cal.App.3d 1035, 1052-1053 [a court can properly deny a motion to reopen evidence if the failure to introduce evidence earlier is a product of trial tactics].) Another of Lamont's prior convictions was discussed during defendant's redirect examination. Thus, while the impeachment value of the prosecutor's questions was outside the scope set by defendant's redirect examination, the topic of Lamont's prior acts was not unrelated to the topics defendant addressed during his examination.

For these same reasons, it does not appear the prosecutor intended to mislead defendant, nor did the prosecutor fail to ask Lamont about his 2004 prior spousal battery through a lack of diligence. (See *Guardianship of Phillip B.* (1983) 139 Cal.App.3d 407, 428 ["denial of a motion to reopen will be upheld if the moving party fails to show diligence or that he [or she] had been misled by the other party"].) Indeed, the prosecutor believed, as did the trial court, that Lamont's prior act of spousal battery was admissible as impeachment evidence, the prosecutor went about admitting the evidence in the wrong way given the trial court's earlier in limine ruling. Thus, to the extent the prosecutor erred by questioning Lamont about his 2004 act of spousal battery, the error was not prejudicial because the questions constituted admissible impeachment evidence.

IV

*Remand Under Senate Bill No. 567 Is Unnecessary*[3]

The parties agree Senate Bill No. 567 applies retroactively to this case. Defendant further argues this matter should be remanded for resentencing under the amended statute because some aggravating factors relied on by the trial court were not stipulated to or

---

[3]     Defendant's request for judicial notice of legislative history pertaining to Senate Bill No. 567, specifically the Senate Committee on Public Safety Analysis of Senate Bill No. 567 (2021-2022 Reg. Sess.), as introduced on March 9, 2021, is granted.

14

proven beyond a reasonable doubt. The People, on the other hand, contend remand is unnecessary because the trial court imposed the upper term based on defendant's criminal history. We agree Senate Bill No. 567 applies retroactively and with the People that remand is unnecessary.

While this appeal was pending, Senate Bill No. 567 came into effect. It amends section 1170, subdivision (b), to make the middle term of imprisonment the longest term of available imprisonment, unless the prosecution proves or the defendant admits the facts underlying a justifying aggravated circumstance beyond a reasonable doubt. (§ 1170, subd. (b)(2), as amended by Stats. 2021, ch. 731, § 1.3.) This change aims to protect a defendant's right to a jury trial by ensuring the trial court does not impose an upper term "without granting defendants the opportunity to have a jury review and determine the truthfulness of alleged aggravating facts." (Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business Analysis of Sen. Bill No. 567 (2021-2022 Reg. Sess.) as amended Sept. 3, 2021, p. 4.)

According to the principle established in *In re Estrada* (1965) 63 Cal.2d 740, an ameliorative change in law applies retroactively to nonfinal judgments in the absence of an express statement to the contrary by the Legislature. (*People v. Francis* (1969) 71 Cal.2d 66, 75-76.) A judgment becomes final when it has reached final disposition in the highest court authorized to review it. (*People v. Rossi* (1976) 18 Cal.3d 295, 304.) Here, defendant's judgment is not yet final and may be reduced by operation of Senate Bill No. 567. The Legislature also did not expressly prohibit the retroactive application of the bill. Senate Bill No. 567 therefore applies retroactively to this case.

When speaking of the trial court's discretion to impose the upper term, section 1170, subdivision (b)(1) through (3), as amended by Senate Bill No. 567, provides the court may impose the upper term "only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term . . . ." By its plain meaning, the provision does not provide for a

15

presumption that a trial court must exercise its discretion in a certain way. Instead, the Legislature created a rule limiting a trial court's discretion to impose the upper term in cases where no aggravating factor has been proven beyond a reasonable doubt or otherwise stipulated to by the defendant.

Given that subdivision (b)(1) through (3) of section 1170 is silent regarding the court's discretion, the newly enacted provision leaves unchanged a trial court's discretion to impose the upper term of imprisonment based on a single aggravating factor (see *People v. Nicolas* (2017) 8 Cal.App.5th 1165, 1182; *People v. Osband* (1996) 13 Cal.4th 622, 728 ["[o]nly a single aggravating factor is required to impose the upper term"]) and the sentence it believes to be appropriate to the case and the defendant being sentenced before it (see *People v. Castaneda* (1999) 75 Cal.App.4th 611, 614 ["A judge's subjective determination of the value of a case and the appropriate aggregate sentence, based on the judge's experiences with prior cases and the record in the defendant's case, cannot be ignored. A judge's subjective belief regarding the length of the sentence to be imposed is not improper as long as it is channeled by the guided discretion outlined in the myriad of statutory sentencing criteria"]).

Reading section 1170, subdivision (b)(1) through (3) in the context of the law existing at the time of its enactment, as we are required to do (see *Leslie Salt Co. v. San Francisco Bay Conservation etc. Com.* (1984) 153 Cal.App.3d 605, 618-619 ["Where, as here, such legislation does not expressly purport to depart from or alter the common law, it will be construed in light of common law principles bearing upon the same subject"]), the prosecution needs to prove only one aggravating circumstance to justify imposition of the upper term (§ 1170, subd. (b)(1)-(3)). A justifying factor is any factor that is listed in the California Rules of Court even before the amendment. (§ 1170, subd. (a)(3) ["In sentencing the convicted person, the court shall apply the sentencing rules of the Judicial Council"].)

16

Here, defendant's prior conviction was found true based on a certified record of conviction, justifying the court's imposition of the upper term. (Cal. Rules of Court, rule 4.421(b)(2); see *People v. Flores* (2022) 75 Cal.App.5th 495, 500-501 [an upper term may be affirmed without remanding for resentencing as long as the reviewing court is satisfied, beyond a reasonable doubt, that "the jury would have found true at least one aggravating circumstance"], citing *People v. Sandoval* (2007) 41 Cal.4th 825.)

Moreover, any error is harmless under the standard announced in *Lopez.* (*People v. Lopez* (2022) 78 Cal.App.5th 459.) There, the court concluded: "The question of prejudice under retroactive application of the revised triad system involves a two-step process, neither of which includes a determination as to whether the trial court relied on a single, or even a few, permissible factors in selecting an upper term. Rather, under the new version of the triad system set forth in section 1170, the initial relevant question for purposes of determining whether prejudice resulted from failure to apply the new version of the sentencing law is whether the reviewing court can conclude beyond reasonable doubt that a jury would have found true beyond a reasonable doubt *all* of the aggravating factors on which the trial court relied in exercising its discretion to select the upper term. If the answer to this question is 'yes,' then the defendant has not suffered prejudice from the court's reliance on factors not found true by a jury in selecting the upper term. However, if the answer to the question is 'no,' we then consider the second question, which is whether a reviewing court can be certain, to the degree required by *People v. Watson* (1956) 46 Cal.2d 818, 836 . . . , that the trial court would nevertheless have exercised its discretion to select the upper term if it had recognized that it could permissibly rely on only a single one of the aggravating factors, a few of the aggravating factors, or none of the aggravating factors, rather than all of the factors on which it previously relied. If the answer to both of these questions is 'no,' then it is clear that remand to the trial court for resentencing is necessary." (*People v. Lopez*, *supra*, 78 Cal.App.5th at p. 467, fn. 11.)

The trial court cited defendant's prior prison term and prior conviction as the reason it was imposing the upper term. One of defendant's prior convictions was established by a certified record and found true by the trial court, and defendant's other prior convictions, as well as his prior prison term, were established by the probation report, and presented to the court in defendant's presence at sentencing -- a time when defendant had every incentive to object if incorrect. We are convinced beyond a reasonable doubt these factors would be found true beyond a reasonable doubt if submitted to a jury. It is reasonably probable the trial court, relying on those findings, will exercise the same discretion it already exercised to impose the upper term. For this reason, remand is unnecessary.

## DISPOSITION

The judgment is affirmed.

                                        /s/
                                   Robie, Acting P. J.

I concur:

  /s/
Krause, J.

DUARTE, J. dissenting:

I disagree with the majority's conclusion that remand is unnecessary in this case. In my view, we cannot properly conclude that the error in failing to comply with the requirements of Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill No. 567) was harmless.

Defendant was sentenced to the upper term for his crime without the benefit of Senate Bill No. 567, which amended Penal Code section 1170, subdivision (b)[1] and provides that a trial court may impose an upper term sentence only where there are aggravating circumstances that justify the imposition of a term exceeding the middle term and the defendant has either stipulated to the facts underlying those circumstances or those facts have been found true beyond a reasonable doubt. (§ 1170, subd. (b)(1)-(2); Stats. 2021, ch. 731, § 1, eff. Jan. 1, 2022.)

The trial court cited multiple aggravating factors: (1) the crime "was very violent"; (2) "defendant has engaged in violent conduct indicating a serious danger to society"; (3) "defendant's prior convictions as an adult are numerous"; (4) "he has served a prior prison term"; (5) defendant was on formal probation and [postrelease community supervision]; and (6) "defendant's prior performance on probation and [postrelease community] supervision has been unsatisfactory." Immediately after citing these six factors, the court stated "[t]he upper term is chosen because of the fact the defendant has served a prior prison term, and his prior convictions as an adult are numerous . . . ." The trial court provided no other insight as to the respective weight it was according any of the multiple factors. None of the prior convictions other than the prior prison term were proven by certified records and none of the aggravating factors were proven beyond a reasonable doubt.

---

[1] Undesignated statutory references are to the Penal Code.

1

The majority concludes remand is unnecessary because one of the aggravating factors relied upon by the trial court--defendant's prior conviction--was found true based on a certified record of conviction.  (Maj. opn., *ante*, at p. 17, citing *People v. Flores* (2022) 75 Cal.App.5th 495, 500-501 (*Flores*.)  While I agree that a trial court has *discretion* to impose the upper term of imprisonment based on a single (properly proven) aggravating factor (see maj. opn., *ante*, at p. 16, citing *People v. Nicolas* (2017) 8 Cal.App.5th 1165, 1182 and *People v. Osband* (1996) 13 Cal.4th 622, 728), that is not what happened here.

Here, the trial court cited multiple factors in support of the upper term sentence and only one was properly proven under the new statute.  Although I agree that a prior conviction may be proved by a certified record of conviction (§ 1170, subd. (b)(3)), I disagree with the conclusion that remand is not required in circumstances where the trial court relied upon multiple aggravating circumstances when imposing the upper term and the reviewing court is satisfied, beyond a reasonable doubt, that "the jury would have found true at least one aggravating circumstance."  (*Flores*, *supra*, 75 Cal.App.5th at p. 501.)

Rather, I agree with *People v. Lopez* (2022) 78 Cal.App.5th 459 (*Lopez*) and *People v. Zabelle* (Jul. 11, 2022, C093173) 2022 Cal.App.Lexis 599 that the law requires a two-step analysis, the second of which is "whether a reviewing court can be certain, to the degree required by *People v. Watson* (1956) 46 Cal.2d 818, 836, that the trial court would nevertheless have exercised its discretion to select the upper term if it had recognized that it could permissibly rely on only a single one of the aggravating factors, a few of the aggravating factors, or none of the aggravating factors, rather than all of the factors on which it previously relied."  (*Lopez*, at p. 467, fn. 11; *Zabelle*, at p. *8.)  Here, the trial court relied on at least two aggravating factors, and cited six, to support its decision to impose the upper term; only defendant's prior prison term was properly proven.  The remainder of the factors were neither stipulated nor proven as required by

2

section 1170, subdivision (b) as amended.  Defendant's purported numerous convictions were supported only by the probation report, which is not a certified copy of the record of conviction (see Evid. Code, §§ 452.5, subd. (b)(1); *id*., 1530, subd. (a)(2)), and defendant's CLETS record, also not a certified record of conviction.  Nor were *any* of the remaining factors recited by the trial court proven beyond a reasonable doubt as required.

The majority purports to also apply the harmless error standard set forth in *Lopez*, *supra*, 78 Cal.App.5th 459 (maj. opn, *ante*, at pp. 17-18), although *Lopez* rejected the conclusion reached by *Flores*, *supra*, 75 Cal.App.5th 495, on which the majority first relies.  The majority concludes beyond a reasonable doubt that defendant's prior convictions would have been found true by a jury because the prior convictions were listed in the probation report, and defendant failed to object when the prior convictions were presented to the court in defendant's presence, despite having "every incentive to object [to the probation report's statement of his prior convictions] if incorrect."  (Maj. opn., *ante*, at p. 18.)

Application of *Lopez*'s first step requires us to examine whether the " 'evidence supporting that [aggravating] factor is overwhelming and uncontested, and there is no "evidence that could rationally lead to a contrary finding." ' "  (*Lopez, supra*, 78 Cal.App.5th 459 at p. 465, quoting *People v. French* (2008) 43 Cal.4th 36, 52-53.)  The majority does not explain how the mere presumption of the existence of extra-record evidence satisfies this standard, and I do not agree that such presumed evidence constitutes evidence that is "overwhelming and uncontested."  I agree with *People v. Zabelle*, *supra*, 2022 Cal.App.Lexis 599 at page *9, footnote 6, that "if the record is insufficient to support a trial court's findings about a defendant's criminal history," the reviewing court should not "presume the existence of extra-record materials, however likely they are to exist, to address this insufficiency."  Indeed, presuming the existence of extra-record evidence undermines the specific language of Senate Bill No. 567 and

3

amended sections 1170 and 1170.1, and signals that this type of noncompliance will always be harmless error.

Further, I disagree that defendant's failure to explicitly dispute the probation report's accuracy excused the error. Defendant did not stipulate to the accuracy of the report or the information therein, as would be required to satisfy the requirements of Senate Bill No. 567. Additionally, "although defendant did have an incentive and opportunity at the sentencing hearing to contest any aggravating circumstances mentioned in the probation report or in the prosecutor's statement in aggravation, that incentive and opportunity were not necessarily the same as they would have been had the aggravating circumstances been tried to a jury" because the standard of proof was lower and because defense counsel may have adopted a different strategy with a jury factfinding than with a judge who is both factfinding and sentencing. (*People v. Sandoval* (2007) 41 Cal.4th 825, 839.) Moreover, we "cannot necessarily assume that the record reflects all of the evidence that would have been presented had aggravating circumstances been submitted to the jury." (*Ibid.*) I disagree with the majority's apparent conclusion that defendant's failure to object to the material contained in the probation report establishes the report's accuracy beyond a reasonable doubt where counsel's strategy in failing to object is unknown, and the standard of proof was lower than it is following enactment of Senate Bill No. 567.

I would remand for resentencing under the new statute. Accordingly, I dissent from the majority's decision not to do so.


                                      _____/s/_____
                                       Duarte, J.