Filed 12/2/24  P. v. Marzetta CA3
Opinion following transfer from Supreme Court

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MARKUS MARZETTA,<br><br>Defendant and Appellant. | C093766<br><br>(Super. Ct. Nos.<br>19FE018634, 20FE004246)<br><br>[OPINION ON TRANSFER] |

At the beginning of the COVID-19 pandemic, defendant Markus Marzetta was arrested after stabbing a security guard during an altercation in front of a store.  Pursuant to the Governor's emergency orders, the Chief Justice, acting in her capacity as Chairperson of the Judicial Council of California (Judicial Council), issued an order extending the statutory time frame in which to hold a preliminary examination for defendants held in custody pending trial.  Defendant moved to dismiss the complaint filed against him when his preliminary examination was not held within the 10-day statutory deadline.  He argued the Chief Justice lacked authority to extend the deadline and the

1

prosecution's failure to hold a preliminary examination within the time provided by the statute constituted a violation of his speedy trial right. The trial court denied the motion. Instead of filing a motion to dismiss the information in the trial court or petitioning for a writ of mandate in this court, defendant decided to proceed to trial. A jury ultimately found defendant guilty of assault with a deadly weapon and found true an allegation he inflicted serious bodily injury during the commission of the offense.

Defendant appeals, arguing his case must be dismissed because his preliminary examination did not occur within 10 days of his arraignment. We disagree. Because defendant waited until after trial to seek review of the alleged speedy trial violation in holding his preliminary examination, defendant must demonstrate prejudice, which he has failed to do. We also conclude defendant's contentions he acted in lawful self-defense during the commission of the crime and the prosecutor committed prejudicial prosecutorial error lack merit.

We requested supplemental briefing regarding whether Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill 567) retroactively applies to defendant and whether he is entitled to have his sentence vacated and remanded. Initially, we concluded remand was unnecessary. Our Supreme Court, however, granted review of defendant's case and transferred the matter back to us to reconsider in light of *People v. Lynch* (2024) 16 Cal.5th 730. Upon reconsideration, we agree with the parties' current positions that defendant's sentence must be reversed and the matter remanded for a full resentencing, we otherwise affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In the evening hours of March 2, 2020, defendant was inside a store and sought to talk to the in-store security guard about getting a job as a security guard at the store. Defendant banged on the door to the security room and Michael A., the in-store security guard, answered. Defendant asked Michael about applying for a job and claimed to be a perfect candidate for a security guard. To Michael, defendant appeared to be under the

2

influence of drugs, so Michael referred defendant to an online application process before closing the security room door. Defendant responded by banging on the door one more time and yelling " '[f]uck you' " at Michael.

About 15 minutes later, Michael went outside of the store for his break. Once outside, he stood and talked with the two other security guards, Austin S. and Julio F. While the three men talked, they saw a woman leave the store with defendant following her. The woman looked uncomfortable, as if she did not want defendant to follow her. Michael told defendant repeatedly to leave the store's property. Defendant walked over to Michael and started yelling at him. Michael and defendant then began arguing with one another. Austin stepped between the men to deescalate the situation. He "polite[ly]" "nudge[d]" defendant away from Michael and told defendant to step away and leave the store's property.

Defendant responded by headbutting Austin. Austin then pushed defendant away from him, and defendant started "bouncing" around and lunging at Austin. Each time defendant lunged at Austin, Austin pushed defendant away. Defendant soon began walking away and Austin and Julio followed behind him to ensure he would leave the property. Michael followed behind Austin and Julio believing the purpose of following defendant was to detain defendant until police arrived. As defendant walked away, he yelled, " 'Follow me, follow me,' " and " 'I got something for you. Come here. Come here. I got something for you.' " Defendant also reached into his pocket like he was trying to get something.

Once defendant got in front of the store, he turned toward Austin. Austin again told defendant to leave the property. Defendant refused, so Austin again pushed defendant to get him off the store's property. An unknown person watching the altercation told defendant to fight Austin. In response to the unknown person's suggestion, defendant said "okay" and discarded his grocery bag. Austin put on gloves anticipating a fight. While doing so, defendant walked to Austin and punched him twice.

3

Austin responded by crouching down and wrapping his arms around defendant's rib cage. He lifted defendant off his feet and took defendant to the ground. Austin then saw defendant had a knife and told Julio defendant was armed. In response, Julio punched and kicked defendant multiple times while defendant was on the ground and while Austin was on top of defendant holding onto his hand that held the knife.

Around this time, Lamont S. saw the altercation and approached Michael complaining about the conduct of the other security guards. When Michael did nothing to break up the fight, Lamont attempted to break up the fight by removing the security guards, which allowed defendant to get out from under Austin. Michael then grabbed defendant and threw him to the side and defendant got away. During the altercation, two of defendant's dreadlocks were torn from his scalp and left on the ground.[1] Defendant also had "abrasions and/or lacerations" around his left eye, bruising on his eyelid, and a bloodied ear.

Once defendant was gone, Austin discovered he had been stabbed near his left rib cage and sliced on his arm. Austin also had three slice marks on his jacket around the stomach area. Austin was taken to the hospital, where it was discovered the knife had punctured his lung. The lung injury required surgery and Austin remained in the hospital for four days. Soon after the stabbing, defendant was arrested and a knife was found in his waistband.

On March 4, 2020, defendant was arraigned and remanded into custody. That same day, Governor Gavin Newsom issued Executive Order N-28-20 declaring California in a state of emergency as a result of the COVID-19 pandemic. On March 17, 2020, the Chief Justice of California, acting in her role as Chair of the Judicial Council, issued an order pursuant to Government Code section 68115 authorizing the presiding

---

[1] The jury viewed surveillance footage of the events that took place in the parking lot and in front of the store.

judge of Sacramento County Superior Court to extend preliminary examination deadlines to 15 court days for cases where the normal 10-court-day deadline would have fallen between March 17, 2020, and April 16, 2020. Per that order, the presiding judge of Sacramento County Superior Court extended the deadline for preliminary examinations to 15 court days for cases where the normal 10-court-day deadline would have fallen between March 18, 2020, and April 16, 2020. On March 18, 2020, defendant was formally arraigned. On March 19, 2020, preliminary examinations were removed from the list of judicial proceedings allowed to take place in Sacramento County Superior Court.

On March 27, 2020, Governor Newsom issued Executive Order N-38-20 suspending the limitations articulated in Government Code section 68115. The next day, the Judicial Council held an emergency meeting and authorized the Chief Justice in her role as Chair of the Judicial Council to take necessary action to protect public health, including to extend the statutory deadline for preliminary examinations. On March 30, 2020, the Chief Justice, as Chair of the Judicial Council, issued a statewide order finding good cause to " '[a]uthorize superior courts to issue implementation orders that: Extend[ed] the time period provided in section 859b of the Penal Code[2] for the holding of a preliminary hearing examination and the defendant's right to release from 10 court days to no more than 30 court days.' " That same day, the presiding judge of the Sacramento County Superior Court issued an order providing all preliminary examinations would be conducted through interactive video technology and impliedly permitted preliminary examinations to again occur. On April 1, 2020, the presiding judge of the Sacramento County Superior Court issued an order pursuant to the Chief Justice's March 30, 2020 emergency order extending the time period provided in Penal Code

---

**2**      Further section references are to the Penal Code unless otherwise indicated.

section 859b for the holding of a preliminary examination from 10 court days to 30 court days.

On April 10, 2020, 16 days after defendant's formal arraignment, his preliminary examination was held. Prior to the examination of witnesses through interactive video technology, defendant made a variety of motions related to pandemic-related procedures, including a motion to dismiss his complaint or release him from custody. Defendant argued, "[T]he Governor does not have the authority to suspend the speedy preliminary examination or speedy trial right statutes to allow the Judicial Council or the [Chief Justice of California] to change that law absent legislation."

The trial court disagreed, reasoning, "[T]he Chief Justice in this state does have the authority to issue emergency orders and extend deadlines for matters like criminal preliminary [examinations]. Based on the current state of the virus epidemic, on March 30th of 2020 the Chief Justice issued a statewide order finding good cause to extend the provisions, the period provided in Penal Code section 859(b) [*sic*] to up to 30 days. Following that[,] the presiding [j]udge of the Sacramento [County] Superior Court issued a similar order on April 1st." Because defendant's preliminary examination was being held within 30 days of his arraignment, the hearing was "within the lawful period as extended by both the Chief Justice and the presiding [j]udge of this [c]ourt."

Defendant was ultimately held to answer and an information was filed charging him with assault with a deadly weapon based on his stabbing of Austin and assault by means of force likely to cause great bodily injury based solely on defendant's headbutting of Austin. It was further alleged defendant inflicted great bodily injury during the commission of the assault with a deadly weapon charge and that he had previously been convicted of a prior serious felony offense that also qualified as a strike offense. Defendant did not move to dismiss the information pursuant to section 995 or seek a writ of mandate in this court.

6

Following a jury trial, defendant was found guilty of assault with a deadly weapon, and the allegation he had inflicted great bodily injury during the commission of that offense was found true. Defendant was found not guilty of assault by means of force likely to cause great bodily injury and a mistrial was declared as to the lesser included offense on that count. In a bifurcated proceeding, the trial court found the allegation true that defendant had previously been convicted of a serious felony that also qualified as a strike offense.

The trial court sentenced defendant to the upper term of four years for the assault with a deadly weapon conviction, doubled to eight years pursuant to the "Three Strikes" law. The court imposed three years for the great bodily injury enhancement attached to that count and an additional five years for the prior serious felony conviction enhancement for a total of 16 years in prison. Defendant was also sentenced on a violation of probation case, for which the court imposed a concurrent term of three years.

When sentencing defendant, the trial court cited multiple aggravating factors: (1) the crime "was very violent"; (2) "defendant has engaged in violent conduct indicating a serious danger to society"; (3) "defendant's prior convictions as an adult are numerous"; (4) "he has served a prior prison term"; (5) defendant was on formal probation and postrelease community supervision; and (6) "defendant's prior performance on probation and [postrelease community] supervision has been unsatisfactory." When justifying the upper term for the assault on a deadly weapon conviction, the trial court stated, "The upper term is chosen because of the fact the defendant has served a prior prison term, and his prior convictions as an adult are numerous."

Defendant appeals.

# DISCUSSION

## I

*Defendant Has Not Shown He Was Prejudiced By*

*The Delay In Holding His Preliminary Examination*

Defendant contends he is entitled to reversal of his conviction and dismissal of the charges against him because his preliminary examination was held six days after the deadline contained in section 859b, despite the fact the Chief Justice extended the time to hold a preliminary examination by 30 court days. In his reply brief, defendant acknowledges that, because he waited until this direct appeal to challenge the alleged unlawful delay in holding his preliminary examination, he must show he was prejudiced by the delay. (See *People v. Clark* (2016) 63 Cal.4th 522, 552 ["nonjurisdictional irregularities in preliminary examination procedures do not require reversal unless the defendant establishes that he or she was deprived of a fair trial or otherwise suffered prejudice as a result. [Citation.] A denial of a defendant's right to trial within a prescribed statutory time period falls within this class of irregularities that are not jurisdictional in the fundamental sense and which, therefore, require a showing of prejudice"].)

Indeed, under the California Constitution, a defendant is not entitled to have judgment set aside absent a showing "that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.) Our Supreme Court has explained that "[a]lthough a defendant seeking pretrial relief for a speedy trial violation is not required to make an affirmative showing of prejudice [citation], the situation is different after judgment. [Citations.] 'Upon appellate review following conviction, . . . a defendant who seeks to predicate reversal of a conviction upon denial of his right to speedy trial must show that the delay caused prejudice: this court, in reviewing the judgment of conviction, must "weigh the effect of the delay in bringing defendant to trial

8

or the fairness of the subsequent trial itself." ' " (*People v. Lomax* (2010) 49 Cal.4th 530, 557, quoting *People v. Johnson* (1980) 26 Cal.3d 557, 574.)

This was the point made by our Supreme Court in *Clark* in the context of section 859b. (*People v. Clark*, *supra*, 63 Cal.4th at p. 552.) While here, in contrast with the defendant in *Clark*, defendant objected in the trial court and sought dismissal, although not pursuant to section 995, he did not pursue mandamus relief and the issue is before this court on appeal following conviction rather than on a pretrial writ. (*Clark*, at p. 552; see *People v. Wilson* (1963) 60 Cal.2d 139, 149 [proper remedy for enforcing speedy trial rights is petition for writ of mandate prior to trial].) For the same reason, defendant's reliance on *Bullock* is misplaced. (*Bullock v. Superior Court of Contra Costa County* (2020) 51 Cal.App.5th 134, 149-150 [dismissal was an appropriate remedy despite the fact a preliminary examination was held during the pendency of mandamus review because the defendant sought mandamus relief as opposed to waiting until after trial].) Thus, defendant must demonstrate he was prejudiced by his pretrial delay.

Defendant argues he was prejudiced by the delay in holding his preliminary examination because his "trial was postponed for several months during the pandemic [citation], which imposed many further restrictions on [his] ability to assist his counsel in his defense, as well as putting him at a high risk of contracting Covid." (Fn. omitted.) With this argument, defendant does not argue with particularity how the fairness of his trial was hindered by the six-day delay. He also does not argue how the six-day delay, as opposed to the subsequent delay caused by the COVID-19 pandemic, led to a material delay in holding his trial. Because defendant has not shown he was prejudiced by the alleged speedy trial violation in holding his preliminary examination, dismissal based on that alleged violation is unwarranted.

## II

*Sufficient Evidence Demonstrated Defendant Acted With A Lack Of Self-Defense*

Defendant contends the evidence was insufficient to demonstrate he acted with a lack of self-defense, as was required for the jury to find him guilty of assault with a deadly weapon. We disagree.

" 'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] We determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.] In so doing, a reviewing court 'presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " (*People v. Edwards* (2013) 57 Cal.4th 658, 715.) "Even when there is a significant amount of countervailing evidence, the testimony of a single witness that satisfies the standard is sufficient to uphold the finding." (*People v. Barnwell* (2007) 41 Cal.4th 1038, 1052.)

" 'To justify an act of self-defense . . . , the defendant must have an honest and reasonable belief that bodily injury is about to be inflicted on him [or her]. [Citation.]' [Citation.] The threat of bodily injury must be imminent [citation], and '. . . any right of self-defense is limited to the use of such force as is reasonable under the circumstances.' " (*People v. Minifie* (1996) 13 Cal.4th 1055, 1064-1065, italics omitted.) The defendant's belief in the need to act in self-defense must be objectively reasonable as determined from the point of view of a reasonable person. (*Id*. at p. 1065; *People v. Humphrey* (1996) 13 Cal.4th 1073, 1082-1083.) "It is well established that the ordinary self-defense doctrine—applicable when a defendant reasonably believes that his [or her] safety is endangered—may not be invoked by a defendant who, through his [or her] own

10

wrongful conduct (e.g., the initiation of a physical assault or the commission of a felony), has created circumstances under which his [or her] adversary's attack or pursuit is legally justified." (*In re Christian S*. (1994) 7 Cal.4th 768, 773, fn. 1, italics omitted; *People v. Valencia* (2008) 43 Cal.4th 268, 288.)

Defendant argues he acted in lawful self-defense when he stabbed Austin because he was outnumbered during a fight, in which Austin was on top of him and Julio was punching and kicking him, and even stomping on his head, while Michael stood by. Under these circumstances, defendant argues, it was reasonable for him to resort to stabbing Austin to protect himself. Defendant relates the facts in the light most favorable to himself instead of in the light most favorable to the judgment. We neither reweigh the evidence nor reevaluate the credibility of witnesses. (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

Indeed, defendant ignores Austin's and Julio's testimony that they were ushering defendant off the store's property after defendant had already harassed a female store patron and initiated a physical altercation with Austin. The second phase of the altercation did not occur because Austin and Julio attacked defendant, it occurred because defendant refused to leave the property, pulled out a knife, and ran toward Austin punching him twice. Austin took defendant to the ground and Julio kicked and punched defendant in response to defendant wielding a knife at Austin. Taking this testimony into account, as we must, it is clear the jury found defendant to be the aggressor and not Austin or Julio. As stated, it is well established the self-defense doctrine may not be invoked by a defendant who, through his or her own wrongful conduct, has created circumstances under which his or her adversary's attack is justified. (*In re Christian S*., *supra*, 7 Cal.4th at p. 773, fn. 1.) Thus, there was evidence from which the jury could have concluded defendant stabbed Austin without justification. Accordingly, the evidence was sufficient to support the jury's determination defendant did not act in self-defense.

11

# III

## *The Prosecutor Did Not Commit Prejudicial Error*

Defendant contends the prosecutor committed prejudicial error by eliciting evidence pertaining to Lamont's prior act of spousal battery that had been excluded during motions in limine. We disagree.

## A

### *Background*

Before trial, defendant objected to the prosecutor's intended use of four of Lamont's prior convictions and the underlying conduct of those convictions as impeachment evidence. These convictions included a 2004 misdemeanor conviction for spousal battery, a 2006 felony conviction for corporal injury on a spouse, a 2007 misdemeanor conviction for corporal injury on a spouse, and a 2015 felony conviction for assault with a deadly weapon. Defendant argued the convictions and their underlying conduct were inadmissible under Evidence Code section 352.

The trial court agreed the 2004 misdemeanor conviction for spousal battery and associated conduct was inadmissible under Evidence Code section 352 because the conviction was "just too remote." The trial court further prohibited the prosecutor from asking whether Lamont was convicted of a misdemeanor related to the 2007 corporal injury on a spouse, but permitted the prosecutor to ask Lamont whether he had inflicted a corporal injury on his spouse in 2007. In the event Lamont denied having inflicted a corporal injury in 2007, the prosecutor would be permitted to impeach Lamont with a certified record of the misdemeanor conviction.

During the prosecutor's cross-examination of Lamont, Lamont testified to having a criminal record. In particular, he admitted to having been convicted of assault with a deadly weapon and, to his recollection, a single conviction of domestic violence when he was 18 years old. When asked whether he got in fights with women, Lamont answered, "No. Not fights. Arguments. I got in a few arguments." On redirect, Lamont also

12

admitted to having been convicted of domestic violence in 2007, when he was 26 years old. Then, on recross-examination, the prosecutor asked Lamont whether he had been convicted of felony domestic violence in 2006. He responded, "If that's what's on the record. I don't recall that. I suffered from a bad motor-vehicle accident in 2016, so I lost a lot of my memory then of my past. [¶] It comes to me, what my criminal history is. I am definitely not going to know everything about my criminal history from 16 years ago." The prosecutor then asked Lamont, "So then you also wouldn't remember committing spousal battery in 2004 then?" Lamont responded, "Yes. I'm starting to recall[] the incident now."

Defense counsel objected and asked to be heard outside the presence of the jury. The trial court overruled the objection. The prosecutor requested for Lamont's answer to be read back by the court reporter and the trial court denied the request. Lamont was then excused as a witness.

Following the close of evidence, defense counsel objected again to the prosecutor's questions pertaining to Lamont's 2004 commission of spousal battery. The trial court agreed the prosecutor violated the court's in limine order not to reference Lamont's 2004 spousal battery conviction. It stated, however, that if the prosecutor had asked to impeach Lamont's insinuation that he did not get in fights with women with his 2004 prior act of spousal battery, the request would have been granted. The problem, as the court saw it, was that the prosecutor went about it the wrong way. The trial court decided to leave the evidence as it was and not instruct the jury to disregard Lamont's 2004 prior act of spousal battery because the evidence was clearly impeachment evidence.

B

*The Prosecutor's Questions Constituted Admissible Impeachment Evidence*

Defendant does not take issue with the trial court's finding that the prosecutor's questions about Lamont's 2004 spousal battery, although elicited in an improper manner,

13

were nonprejudicial because the resulting evidence would have been admissible impeachment evidence. Instead, defendant argues the evidence was inadmissible because the prosecutor's questions, which were elicited on recross-examination of Lamont, were outside the scope set by defense counsel's redirect examination.

Defendant did not object on this basis in the trial court. " 'It is well settled that making a timely and specific objection at trial . . . , is a necessary prerequisite to preserve a claim of prosecutorial [error] for appeal.' " (*People v. Johnsen* (2021) 10 Cal.5th 1116, 1164.)

In any event, "[t]rial courts have broad discretion in deciding whether to reopen the evidence." (*Horning v. Shilberg* (2005) 130 Cal.App.4th 197, 208.) With the trial court's ruling that it would have permitted the prosecutor to impeach Lamont, it impliedly stated it would have allowed the prosecutor to reopen her cross-examination for that purpose. That decision was not an abuse of discretion. The prosecutor's questions on recross-examination regarding Lamont's 2004 prior act of spousal battery did not appear to be asked as the result of trial tactics. (See *Rosenfeld, Meyer & Susman v. Cohen* (1987) 191 Cal.App.3d 1035, 1052-1053 [a court can properly deny a motion to reopen evidence if the failure to introduce evidence earlier is a product of trial tactics].) Another of Lamont's prior convictions was discussed during defendant's redirect examination. Thus, while the impeachment value of the prosecutor's questions was outside the scope set by defendant's redirect examination, the topic of Lamont's prior acts was not unrelated to the topics defendant addressed during his examination.

For these same reasons, it does not appear the prosecutor intended to mislead defendant, nor did the prosecutor fail to ask Lamont about his 2004 prior spousal battery through a lack of diligence. (See *Guardianship of Phillip B.* (1983) 139 Cal.App.3d 407, 428 ["denial of a motion to reopen will be upheld if the moving party fails to show diligence or that he [or she] had been misled by the other party"].) Indeed, the prosecutor believed, as did the trial court, that Lamont's prior act of spousal battery was admissible

14

as impeachment evidence, the prosecutor went about admitting the evidence in the wrong way given the trial court's earlier in limine ruling. Thus, to the extent the prosecutor erred by questioning Lamont about his 2004 act of spousal battery, the error was not prejudicial because the questions constituted admissible impeachment evidence.

IV

*Remand Under Senate Bill 567 Is Necessary*[3]

The parties agree Senate Bill 567 applies retroactively to this case. Defendant further argues this matter should be remanded for resentencing under the amended statute because some aggravating factors relied on by the trial court were not stipulated to or proven beyond a reasonable doubt and we cannot be certain beyond a reasonable doubt the jury would have found the aggravating factors true had it been given an opportunity to do so. The People agree, as do we.

While this appeal was pending, Senate Bill 567 came into effect. It amends section 1170, subdivision (b), to make the middle term of imprisonment the longest term of available imprisonment, unless the prosecution proves or the defendant admits the facts justifying an aggravated circumstance beyond a reasonable doubt. (§ 1170, subd. (b)(2), as amended by Stats. 2021, ch. 731, § 1.3.) This change aims to protect a defendant's right to a jury trial by ensuring the trial court does not impose an upper term "without granting defendants the opportunity to have a jury review and determine the truthfulness of alleged aggravating facts." (Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business Analysis of Sen. Bill No. 567 (2021-2022 Reg. Sess.) as amended Sept. 3, 2021, p. 4.)

---

[3] Defendant's request for judicial notice of legislative history pertaining to Senate Bill 567, specifically the Senate Committee on Public Safety Analysis of Senate Bill 567 (2021-2022 Reg. Sess.), as introduced on March 9, 2021, is granted.

According to the principle established in *In re Estrada* (1965) 63 Cal.2d 740, an ameliorative change in law applies retroactively to nonfinal judgments in the absence of an express statement to the contrary by the Legislature.  (*People v. Francis* (1969) 71 Cal.2d 66, 75-76.)  A judgment becomes final when it has reached final disposition in the highest court authorized to review it.  (*People v. Rossi* (1976) 18 Cal.3d 295, 304.)  Here, defendant's judgment is not yet final and may be reduced by operation of Senate Bill 567.  The Legislature also did not expressly prohibit the retroactive application of the bill.  Senate Bill 567 therefore applies retroactively to this case.

In *Lynch*, our Supreme Court considered when a remand for resentencing is required for defendants sentenced to an upper term of imprisonment based on factors that do not comply with the current version of section 1170, subdivision (b).  (*People v. Lynch*, *supra*, 16 Cal.5th at pp. 742-743.)  Our Supreme Court held, "[A] sentence imposed under former section 1170[, subdivision ](b) must be reversed and remanded unless the reviewing court concludes beyond a reasonable doubt that a jury, applying that same standard, would have found true all of the aggravating facts upon which the court relied to conclude the upper term was justified, or that those facts were otherwise proved true in compliance with the current statute."  (*Lynch*, at p. 743.)

Here, when imposing the upper term the trial court cited that defendant had served a prior prison term and his prior convictions as an adult were numerous.  We cannot be certain beyond a reasonable doubt the jury would have found true beyond a reasonable doubt that defendant's prior convictions were numerous given the lack of certified records demonstrating defendant's multiple convictions (see § 1170, subd. (b)(3)) and the subjective meaning of the term numerous (see *People v. Sandoval* (2007) 41 Cal.4th 825, 840).  Given this uncertainty, defendant is entitled to remand for resentencing.

## DISPOSITION

The sentence is reversed.  The matter is remanded solely for full resentencing and further litigation of the aggravating circumstances and for the trial court to exercise its discretion under the current section 1170, subdivision (b).  The judgment is otherwise affirmed.


/s/_____
ROBIE, Acting P. J.



We concur:



/s/_____
DUARTE, J.



/s/_____
KRAUSE, J.

17